Michelle C. KMONK–SULLIVAN, George Laufer, Mary Marano, Abby L. Resnick, Lesia Cuccaro, Joseph Dziniak, Frank Scialabba, Cristy Holmes, Joseph Orth, Lisa Hopson, Jennifer Eggan, James Fierle, Donald Greg, Theodore Romano, Theodore J. Slippy, Robert Whalen, Mary Ann Woods, Geraldine Young, Jamie Winkler, Christena Kovatch, Jerry Kovactch, Christopher Blickenderfer, Joyce Calabrese, Richard Carryer, Shannon Moore, Eileen Rhodes, Doris Robinson, Robert Mowery, Jean Ryer, Nan Camp, Donna Tieren, John Caskey, Gloria Somerhalder, Karen Weil, Appellees

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Nationwide Insurance Companies, Commercial Union Insurance Companies, Prudential Insurance Company of America, Aetna, Inc., Erie Insurance Group, Allstate Insurance Company, Progressive Casualty Insurance Company, Metropolitan Life Insurance Company, Liberty Mutual Insurance Group, American States Insurance,

Todd Prugar, Patricia Madden, Janet Bradley, Susan Johnson, Paul Johnson, Catherine Dahlgaard, Donald Edgar, Elaine Kruzynski, Lawrence Pavlok, Joseph Etheridge, Stephanie Beck.

Appeal of Aetna, Inc., American States Insurance Company, Allstate Insurance Company, Commercial Union Insurance Companies, Prudential Insurance Company, and Nationwide Insurance Companies, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 8, 1999.

Filed Dec. 22, 1999.

Before McEWEN, President Judge, DEL SOLE, KELLY, POPOVICH, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, and STEVENS, JJ.

JOHNSON, J.

¶ 1 In this appeal, we determine whether exclusions in automobile insurance policies that deny underinsured motorist benefits to the insured person because the underinsured motor vehicle is operated by a Commonwealth agency violate the Motor Vehicle Financial Responsibility Law [hereinafter MVFRL], 75 Pa.C.S. §§ 1701–1799.7, or are contrary to public policy. We conclude that such government vehicle exclusions impermissibly conflict with the provisions of the MVFRL and violate public policy. Accordingly, we affirm the trial court's judgment that the insureds are legally entitled to recover underinsured motorist [hereinafter UIM] benefits under their own automobile insurance policies.

¶ 2 This appeal arose from claims for personal injury made by individuals against a self-insured government entity. Approximately fifty people were injured while riding on a Port Authority of Allegheny County [hereinafter PAT] bus when it hit another PAT bus head-on. PAT is a Commonwealth agency and is therefore subject to the statutory provisions for sovereign immunity and exceptions to sovereign immunity under the Political Subdivision Tort Claims Act [hereinafter PSTCA]. 42 Pa.C.S. §§ 8521–28 (1998); *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 4, 568 A.2d 931, 933 (1990). The PSTCA provides that, in a negligence action against the Commonwealth arising from the "same cause of action or transaction or occurrence," the injured parties may recover no more than $250,000 for any one person or $1,000,000 in the aggregate from the Commonwealth. 42 Pa.C.S. § 8528(b).

¶ 3 PAT filed an interpleader action in the Court of Common Pleas of Allegheny County, and turned over the aggregate cap amount of $1,000,000 to be divided among the injured individuals. PAT is a self-insured entity. The $1,000,000 accounted for approximately one-third of each injured individual's damages. Thereafter, thirty-four of the injured individuals filed claims with their own automobile insurance carriers to recover the remaining portion of damages in UIM benefits. These individuals are insured by the defendant insurers.

¶ 4 The insurers denied the claims based on the governmental vehicle exclusions contained in each policy. Consequently, the insureds filed an application for declaratory judgment in the Court of Common Pleas of Allegheny County. The Honorable John L. Musmanno, former Civil Division Administrative Judge, now a judge of this Court, entered an Adjudication and Decree Nisi on stipulated facts in favor of the insureds. Pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure, Judge Musmanno denied the insurers'

post-trial motions and entered a Final Judgment by Court Order on December 10, 1997. The insurance companies filed an appeal, and on September 3, 1998, a three-judge panel of this court reversed the trial court. On April 1, 1999, we granted the insureds' Application for Reargument.

¶ 5 The insureds submit three issues for our review:

1. Whether a provision contained in the defendants' automobile insurance policies which excludes from the definition of an "underinsured vehicle" any vehicle owned by a government unit violates the terms of the MVFRL or is against public policy?

2. Whether plaintiffs are entitled to underinsured motorist benefits even though they are not "legally entitled" to any further damages from the third party tortfeasor by virtue of a statutory "cap" on the amount of damages that may be obtained from a governmental entity?

3. Whether defendants' lack of subrogation rights against the governmental tortfeasor makes valid the UIM exclusions at issue here?

Brief of Insureds at 1.

¶ 6 The parties stipulated the facts, and the rulings below concerned only questions of law. Thus, our scope of review is plenary. *Wojdak v. Greater Philadelphia Cablevision*, 550 Pa. 474, 488, 707 A.2d 214, 220 (1998). As this matter involves only questions of law, our standard of review is limited to determining whether the Court of Common Pleas committed an error of law. *Stone & Edwards Ins. v. Commonwealth, Dep't of Ins.*, 538 Pa. 276, 281 n. 2, 648 A.2d 304, 307 n. 2 (1994).

¶ 7 The parties disagree on the proper construction of "underinsured motor vehicle" and "legally entitled" as contained in the MVFRL. After applying our rules of statutory construction to these terms, we find that the government vehicle exclusions contained in the insurers' policies

violate both the plain language and legislative intent of the MVFRL.

¶ 8 Our goal in statutory interpretation is to "ascertain and effectuate the intention of the General Assembly," and we strive to give effect to all the provisions in a statute. 1 Pa.C.S. § 1921(a). The purpose of UIM coverage under the MVFRL is to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are *legally entitled* to recover damages therefor from owners or operators of *underinsured* motor vehicles." 75 Pa.C.S. § 1731(c) (emphasis added). An "underinsured motor vehicle" is "[a] motor vehicle for which the limits of available *liability insurance* and *self-insurance* are insufficient to pay losses and damages." *Id.* at § 1702 (emphasis added). The MVFRL requires insurers to offer UIM coverage on motor vehicles that are "registered or principally garaged in this Commonwealth," but does not require policyholders to purchase UIM coverage. *Id.* at § 1731(a). The MVFRL has a broad application with one exception:

### § 1703. Application of chapter

This chapter does not apply with respect to any motor vehicle owned by the United States.

¶ 9 In their brief, insurers set forth the government vehicle exclusion from the American States Insurance policy and agree that it is typical of the language found in the other policies:

"Underinsured motor vehicle" means a vehicle for which the sum of all liability bonds or policies that apply at the time of an "accident" do not provide at least the amount an "insured" is legally entitled to recover as damages.

However, an "underinsured motor vehicle" does not include any vehicle:

\* \* \*

b. Owned by a governmental unit or agency.

Brief of Insurers at 7. Both parties agree that this government vehicle exclusion language is clear and unambiguous, and the court shall give effect to insurance policy language that is clear and unambiguous. *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 586, 640 A.2d 1234, 1235 (1994). However, even clear and unambiguous insurance policy language may conflict with an applicable statute, in this case the MVFRL. In such situations, we cannot give effect to the contractual provision.

As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.

*Allwein v. Donegal Mut. Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744, 752 (1996) (en banc) (internal citations omitted). Although the courts do not have a license to rewrite an insurance contract, the insurers do not have a license to rewrite statutes. *Id.*

¶ 10 The insurers argue that the PAT bus, a Commonwealth agency-owned vehicle, does not meet the MVFRL's definition of underinsured motor vehicle because "[t]he limitations upon the [insureds'] recovery are not caused by insufficient *insurance*. Rather, the [insureds'] cannot recover sufficiently from the tortfeasor because of statutory immunity [pursuant to the PSTCA]." Brief of Insurers at 10 (emphasis in original). We disagree. The PAT bus fits squarely into the MVFRL's definition of "underinsured motor vehicle."

¶ 11 We conclude initially that governmental units, like the Commonwealth agency in this case, may own or operate an "underinsured motor vehicle" within the purview of the MVFRL. The insurers admitted, "PAT is a self-insured pursuant to the provisions of 75 Pa.C.S.A. § 1787, and has undertaken to provide financial security to the extent of the aforementioned statutory cap." Insurers' Consoli-

dated Brief, 7/14/97 at 2. The MVFRL defines an "underinsured motor vehicle" as one "for which the limits of available ... *self insurance* are insufficient to pay losses and damages." 75 Pa.C.S. § 1702 (emphasis added). Since the $1,000,000 compensation paid by PAT through self-insurance was insufficient to cover the insureds' damages, the PAT bus is an "underinsured motor vehicle" as that term is defined in the MVFRL.

■ ¶ 12 We conclude, as well, that individuals injured by governmental vehicles are "legally entitled" to recover UIM benefits, as that term is used in the MVFRL. The insurers argue, to the contrary, that the insureds are not "legally entitled" to recover damages above the $1,000,000 statutory limit that they have already received in the aggregate pursuant to the PSTCA. In support of this argument, insurers cite the following cases: *Federal Kemper Ins. Co. v. Wales*, 430 Pa.Super. 208, 633 A.2d 1212, 1214 (1993), *Bruck v. Pennsylvania Nat'l Ins. Co.*, 449 Pa.Super. 22, 672 A.2d 1335, 1339 (1996), and *State Farm Mut. Auto. Ins. v. Krewson*, 764 F.Supp. 1012 (E.D.Pa.1991). Brief of Insurers at 10–12.

¶ 13 The insurers' reliance on these cases is misplaced. In each case, an applicable statute divested the plaintiff of his or her cause of action. In *Wales*, the worker's compensation statute *completely barred* the injured employee from bringing suit against his co-employee tortfeasor. In *Bruck*, a New Jersey statute *completely barred* an injured non-resident automobile owner from recovering non-economic damages. In *Krewson*, the law of the Cayman Islands *completely barred* the father of the decedent from recovering damages for loss of future income.

¶ 14 In contrast to *Wales*, *Bruck*, and *Krewson*, the insureds in this case had a cause of action against, and thus were "legally entitled" to recover from, the governmental tortfeasor. In fact, the insureds received, in the aggregate, $1,000,-000 from the Commonwealth agency. By waiving sovereign immunity to this extent, the legislature acknowledged a cause of action, and thus a legal entitlement, to parties injured through the negligent operation of government vehicles. Although the PSTCA puts statutory "caps" on the *amount* of damages recoverable from a political subdivision, such caps do not change the fact that the governmental units are liable and therefore must provide for either insurance or self-insurance to cover the extent of their liabilities.

■ ¶ 15 Further evidence that the legislature did not intend to exclude Commonwealth agency vehicles from the purview of the MVFRL is found in the MVFRL's scope of application statement: "This chapter does not apply with respect to any motor vehicle owned by the United States." 75 Pa.C.S. § 1703. To this we apply our rule of statutory construction: "Exceptions expressed in a statute shall be construed to exclude all others." 1 Pa.C.S. § 1924. As established *supra*, the PAT bus fits into the MVFRL's definition of an "underinsured motor vehicle." 75 Pa.C.S. § 1702. Only one exception to the broad rule of applicability of the MVFRL is noted in the MVFRL – that for federally owned government vehicles. Thus, the MVFRL's scope of application includes Commonwealth agency vehicles such as the PAT bus. If the legislature intended to exclude Commonwealth agency vehicles from the purview of the MVFRL, it would have done so when it drafted the federally owned government vehicle exclusion. Furthermore, the legislature expressly made the MVFRL applicable to all motor vehicles required by state law to be registered, 75 Pa.C.S. § 1712, knowing that Commonwealth agency vehicles are required to be registered by statute. 75 Pa.C.S. §§ 1301 & 1302 (requires registration for motor vehicles except certain types of motor vehicles that are exempt from this requirement).

■ ¶ 16 We now turn to the public policy considerations underlying the MVFRL and conclude that, in addition to

violating the terms of the MVFRL, the government vehicle exclusions are contrary to public policy. The Pennsylvania Supreme Court provided a guide for determining if an insurance contract provision, such as the government vehicle exclusion in this case, is against public policy:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in declaring what is or is not in accord with public policy. The phrase, "public policy" has been used also when the courts have interpreted statutes broadly to help manifest their legislative intent.

*Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 586–87, 640 A.2d 1234, 1235 (1994) (internal quotes and citations omitted). Thus, our focus in deciding whether to uphold an insurance policy exclusion, which operates to deny coverage to an injured party, is the factual circumstances of the particular case. *Id.* at 595, 640 A.2d at 1240. " '[C]ontract provisions [that] are not in accord with public policy, and are not advantageous to the insured are particularly subject to a finding of invalidity.' " *Allwein*, 671 A.2d at 753 (quoting GEORGE J. COUCH, COUCH ON INSURANCE § 13.7, at 827–29 (2d ed. rev.1984)). " 'It is also presumed that the Legislature intends to favor the public interest as opposed to any private interest.' " *Allwein*, 671 A.2d at 751 (quoting *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 431, 664 A.2d 84, 87 (1995)). *See also* 1 Pa.C.S. § 1922. "In close or doubtful cases, we must interpret the intent of the legislature and the language of the insurance policy to favor coverage for the insured." *Allwein*, 671 A.2d at 751 (internal quotes and citation omitted).

¶ 17 Thus, to determine if the government vehicle exclusions violate public policy, we must ascertain the legislative intent underlying the MVFRL. The MVFRL was enacted, in part, to establish a liberal compensatory scheme of underinsured motorist protection. *Marroquin v. Mutual Benefit Ins. Co.*, 404 Pa.Super. 444, 591 A.2d 290, 293 (1991). "The policy of liberally construing the MVFRL is based upon the policy of indemnifying victims of accidents for harm they suffer on Pennsylvania highways." *Allwein*, 671 A.2d at 751. Underinsured motorist coverage is designed to protect an insured from a negligent driver of another vehicle, who causes injury to the insured, and lacks adequate insurance coverage to compensate the insured for those injuries. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 564, 711 A.2d 1006, 1008 (1998). Moreover, "[u]nderinsured motorist insurance is purchased to protect oneself from other drivers whose liability insurance purchasing decisions are beyond one's control." *Paylor*, 536 Pa. at 591, 640 A.2d at 1238. Prior to the enactment of the MVFRL, motor vehicle drivers were required to carry uninsured motorist coverage but not underinsured motorist coverage. 40 P.S. §§ 1009.101–1009.701 (repealed 1984). As a result, an individual involved in a motor vehicle accident was in a better position if injured by a negligent driver who was uninsured rather than one who had insurance but whose liability limits were inadequate. In an attempt to rectify this inequity, the legislature passed the MVFRL, requiring insurers to offer underinsured motorist coverage. 75 Pa.C.S. § 1731(a). The insureds in this case are precisely the type of individuals whom UIM coverage was designed to protect—individuals injured by a tortfeasor with inadequate insurance coverage.

¶ 18 In their argument that the government vehicle exclusions comport with public policy, the insurers argue that the primary goal of the MVFRL, as amended in 1990, was to contain the spiraling consum-

er costs of automobile insurance. Brief of Insurers at 13–17. The insurers argue that the 1990 amendments to the MVFRL forced insurance rates to drop by allowing consumers to forego certain types of coverage. *Id.* For example, the consumer may now elect a limited tort option, elect lower limits of medical benefits, or waive the right to stack UM/UIM benefits. 75 Pa.C.S. §§ 1705, 1711, 1738 (respectively); Brief of Insurers at 14 n.6. Most pertinent to this case, a consumer can also choose whether to purchase or forego UIM coverage. 75 Pa.C.S. § 1731. The insurers argue that allowing the consumer to forego certain types of coverage decreases premiums and decreases the insurers' exposure to risk, thus furthering the goal of cost-containment. Brief of Insurers at 14–17.

¶ 19 Even if we were to accept the insurers' position that cost-containment is the primary goal to be furthered by the MVFRL, their argument is inapplicable to the insureds in this case who chose to purchase UIM coverage instead of waiving UIM coverage and paying reduced premiums. The 1990 amendments to the MVFRL gave the insureds the choice of saving money in premiums or purchasing more protective coverage, and they chose to purchase the extra protection that UIM coverage provides. If cost-containment were the only goal of the MVFRL, as insurers propose, then insureds would not have the option to purchase any of the extra protections such as UIM coverage, full-tort option, or right to stack UM/UIM benefits. As the Pennsylvania Supreme Court has stated, " 'there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive.' " *Eichelman*, 551 Pa. at 566, 711 A.2d at 1010 (quoting *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 349, 648 A.2d 755, 761 (1994)) (upholding household exclusion as furthering legislative policy behind UIM coverage in the MVFRL since claimant's insurance premiums were reduced because he voluntarily chose not to purchase UIM coverage). By choosing to purchase UIM coverage, the

insureds reasonably expected to shift the risk of loss to their insurers in the event of injury caused by an underinsured tortfeasor such as a government tortfeasor protected by statutory caps on liability.

¶ 20 Moreover, our court has already announced that cost-containment is not the only goal of the MVFRL:

> While it is true that the MVFRL was concerned with the spiraling costs of automobile insurance under the then-existing no-fault laws, the reason for the concern was the increasing number of uninsured and underinsured drivers on the highways, and the resultant inability of those drivers to indemnify their victims for losses and damages sustained as a result of their negligence. The goal of reducing costs was, therefore, tied to the broader goal of indemnification.

*Allwein*, 671 A.2d at 751 (internal citation omitted).

¶ 21 We have concluded also that "[i]t is within the public policy of the Commonwealth of Pennsylvania to assign costs to those who have created the need for the cost." *Marino v. General Accident Ins. Co.*, 416 Pa.Super. 1, 610 A.2d 477, 479 (1992). If we upheld the government vehicle exclusion in this case, we would be penalizing the insureds for a factor beyond their control (i.e. the identity of the tortfeasor). If the injured insureds had been "fortunate" enough to be impacted by a privately owned underinsured vehicle, they could have recovered UIM benefits under their own policies. Upholding the exclusion would shift the costs to the insureds, who had no part in creating the risk that led to their injuries. By paying extra to purchase UIM coverage, the insureds shifted this risk of loss to the insurer. Allowing the insurers to evade payment of UIM benefits in this case, where the insured has paid a premium to procure UIM coverage, would be against public policy.

¶ 22 Insurers cite to cases where other exclusions have been upheld. However, these cases involved an insured whose vol-

untary choices or action increased the risk of loss. *See e.g., Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994) (upholding territorial exclusion where insured was injured by phantom vehicle while driving in Barbados); *Marino*, 610 A.2d at 479 (upholding exclusion of claims for bodily injury while the insured commercial vehicle was carrying persons or property for a fee); *Paylor*, 536 Pa. at 595, 640 A.2d at 1241 (upholding family vehicle exclusion in the context of a single car accident where the insured was trying to convert UIM coverage into liability coverage). Most notably, in *Paylor*, the Pennsylvania Supreme Court said that upholding the family car exclusion is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL. 536 Pa. at 595, 640 A.2d at 1240. Again, the insureds in this case had no part in creating the risk that contributed to the loss. They had no control over the identity of the tortfeasor that caused their injuries.

¶ 23 Finally, this appeal presents the question of whether the insurers' lack of subrogation rights against the governmental tortfeasor makes the government vehicle exclusion valid. We conclude that the government vehicle exclusion is invalid regardless of insurers' lack of subrogation rights.

> The goal of subrogation is to place the burden of the debt upon the person who should bear it. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he is subrogated.

*Johnson v. Beane*, 541 Pa. 449, 456, 664 A.2d 96, 100 (1995).

¶ 24 The insurers argue that since the insureds cannot recover more than the statutory cap from the Commonwealth, the insurers right to subrogation is impaired through no fault of their own. Brief of Insurers at 31, 33. The insurers cite cases where, due to impairment of insurers' subrogation rights, denial of insurance benefits to insureds were upheld. Brief of Insurers at 31–32. However, in all the cases cited by insurers, the plaintiff took some action that destroyed the insurers' subrogation rights, such as settling with the tortfeasor or filing an untimely action against third party tortfeasors. *See e.g., Archer v. State Farm Ins. Co.*, 419 Pa.Super. 558, 615 A.2d 779 (1992) (insurer's subrogation rights extinguished when insured settled with tortfeasor); *Torres v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 435 Pa.Super. 325, 645 A.2d 1322 (1994) (insured's failure to file timely savings action against tortfeasors resulted in impairment of assigned claims plan's subrogation rights); *Dyer v. Travelers*, 392 Pa.Super. 202, 572 A.2d 762 (1990) (insured's prosecution of claim to judgment prejudiced assigned claims plan designee's right to subrogation); *Zourelias v. Erie Ins. Group*, 456 Pa.Super. 775, 691 A.2d 963 (1997) (insured failed to protect insurer's subrogation rights by settling legal malpractice claim with attorney who allowed statute of limitation to run against vehicular tortfeasor). These cases are readily distinguished from the factual situation in this case. Here, the insureds did nothing to impair the insurers' right to subrogation against the Commonwealth.

¶ 25 The insurers fail to recognize the entire purpose of UIM coverage, which is to pass the risk of loss to the insurer when a tortfeasor cannot fully compensate the insured for his injuries. We cannot circumvent the purpose of UIM coverage on the basis that insurers cannot effectuate subrogation. If we did, there would be little reason for UIM coverage to exist. We reject the insurers' claim that lack of subrogation rights against the governmental tortfeasors obviates their contractual duty to provide UIM benefits to the insureds who paid additional premiums to purchase UIM coverage.

¶ 26 In summary, we conclude that the government vehicle exclusions contained in these automobile insurance policies violate the MVFRL. The PAT bus, a Commonwealth agency vehicle, was self-insured to $1,000,000. This amount was "insufficient

to pay losses and damages," thus the PAT bus is an "underinsured motor vehicle" as defined in section 1702 of the MVFRL. The insureds were "legally entitled," as that term is used in section 1731(c) of the MVFRL, to recover $1,000,000 from the Commonwealth. Furthermore, the government vehicle exclusion is against public policy because it is inconsistent with the legislative intent of the MVFRL to indemnify those injured insureds who affirmatively choose to purchase UIM coverage, and, in so doing, sacrifice reduced premium payments. The government vehicle exclusion is also contrary to public policy because it penalizes the insureds for a factor beyond their control, in this case, the identity of the tortfeasor.

¶ 27 For the foregoing reasons, we will affirm the judgment entered on the order that found the government vehicle exclusion both in conflict with the MVFRL and contrary to public policy.

¶ 28 In a post-submission communication, the insurers cite to *Selective Insurance Group, Inc. v. Martin*, No. 90–CV–1590, slip op., 1999 WL 744332 (E.D. Pa. filed Sept. 23, 1999), as persuasive authority in the instant case. In *Selective*, the Honorable James T. Giles relied upon our Court's three-judge panel decision in *Midili v. Erie Insurance Group*, 1999 Pa. Lexis 14 (Pa.Super. January 22, 1999), in concluding that the government vehicle exclusion comported with both the MVFRL and public policy. However, our Court's three-judge panel decision in *Midili* has since been vacated. *Midili* involves the exact same issues raised here and was consolidated with the instant case for re-argument. In *Midili*, the trial court upheld the validity of the government vehicle exclusion. Based upon the conclusions reached in this case, we will be reversing the trial court decision in *Midili* with a forthcoming separate decision.

¶ 29 Judgment **AFFIRMED**.