**Kristin RICHMOND, Appellant,**

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued May 22, 2001.

Filed Dec. 27, 2001.

Michael J. Piosa, Allentown, for appellant.

John I. Gordon, Philadelphia, for appellee.

Before FORD ELLIOTT, BROSKY, and BECK, JJ.

BROSKY, J.

¶ 1 We decide whether an insurer properly denied underinsured motorist coverage because the claimant was a passenger on a non-owned motorcycle at the time of the accident. Plaintiff-appellant Kristin Richmond made a claim for underinsured motorist benefits under a policy issued by Defendant-appellee Prudential Property and Casualty Insurance Company (Pru-

dential), which Prudential denied. The parties then proceeded to arbitration and the majority of the arbitrators found against the insured and in favor of Prudential. Appellant then filed a Petition to Vacate the Arbitration Award with the Lehigh County Court of Common Pleas, which was also denied. This appeal followed and upon a careful review of this matter, we reverse.

■ ¶ 2 The facts are not in dispute, and the rulings below concerned only questions of law. Accordingly, our scope of review is plenary. *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 746 A.2d 1118, 1120 (Pa.Super.1999), *appeal granted*, 565 Pa. 647, 771 A.2d 1285 (2001). We must now determine whether the trial court committed an error of law in denying Appellant's Petition to Vacate the Arbitrator's Award.

¶ 3 Appellant suffered injuries while riding as a passenger on a motorcycle operated by a third party, the tortfeasor. Appellant made a claim against the tortfeasor's liability insurance policy and recovered the available policy limits. However, this recovery was inadequate to fully compensate Appellant for her injuries, and she made a claim for underinsured motorist coverage under the Prudential policy purchased by her father, with whom she was residing at the time of the accident. Appellee Prudential denied coverage based on the following provisions in its insurance policy:

**DEFINITIONS**

**CAR**

A **car** is a private passenger automobile, station wagon, jeep-type or van with four wheels which is designed for use mainly on public roads. A pick-up truck with four or six wheels and a load capacity of one ton or less is also a **car.**

**MOTOR VEHICLE**

A **motor vehicle** is a self-propelled land vehicle which is required to be registered by the law of **your** state for use on public roads.

**WHO IS INSURED**
**IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)**
**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part. Other people are insured by using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

**IN A NON–OWNED CAR**
**You** and a **resident relative** are insured while using a **non-owned car.** The owner must give permission to use it. It must be used in the way intended by the owner.

**HIT BY A MOTOR VEHICLE**
**You** and a **resident relative** are insured if hit by an underinsured **motor vehicle** while a pedestrian.

**UNDERINSURED MOTORISTS COVERAGE**
If you have this coverage (see the Declarations), we will pay up to **our** limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an underinsured motor vehicle. **Our** payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the underinsured **motor vehicle** because: ... The owner or driver responsible for the accident has liability insurance or a liability bond with limits that are less than the full amount the insured is legally entitled to recover as damages.

R.R. 16a; 36a–37a. (emphasis in original).

¶ 4 Part 5 of the policy is entitled, "UNDERINSURED MOTORISTS PAC/5 PA

(*ED.7/90* ) IF YOU ARE HIT BY A MO-TOR VEHICLE THAT IS UNDERIN-SURED." This part continues, OUR OB-LIGATIONS TO YOU (PART 5), and provides:

### UNDERINSURED MOTORISTS COVERAGE

If **you** have this coverage (see the Declarations), **we** will pay up to **our** limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an underinsured **motor vehicle. Our** payment is based on other amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the underinsured **motor vehicle** because:

### THE OWNER OR DRIVER IS UN-DERINSURED

The owner or driver responsible for the accident has liability insurance or a liability bond with limits that are less than the full amount the insured is legally entitled to recover as damages.

R.R. at 36a. (emphasis in original).

¶ 5 Appellant alleges *inter alia* that this policy is ambiguous and should be construed against the insurer to provide coverage, and that this "non-car" exclusion is against the public policy considerations as set forth in the Motor Vehicle Financial Responsibility Law (MVFRL).

¶ 6 For the reasons that follow, we find that the trial court committed an error of law because (1) the underinsured motorist (UIM) provisions of the insurance policy at issue are so ambiguous as to preclude a finding in favor of Prudential; and (2) this exclusion is against the public policy considerations as set forth in the Motor Vehicle Financial Responsibility Law (MVRFL).

■ ¶ 7 As our Supreme Court stated in *Paylor v. Hartford Insurance Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994):

The interpretation of a contract of insurance is a matter of law for the courts to decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract.

*Paylor, supra,* (internal citations omitted). However, a provision is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Bowersox v. Progressive Casualty Insurance Co.,* 781 A.2d 1236, 2001 WL 873312 (August 3, 2001, Pa.Super.). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983).

■ ¶ 8 The first paragraph of Part 5 could be interpreted to mean that Appellant could not collect UIM benefits based on this provision because she was not "struck" by an underinsured motor vehicle. However, Appellant would not have been covered under the language of this paragraph if she were a passenger in a *car* whose driver caused an accident and was underinsured, because she would not have been "struck" by an underinsured motor vehicle.

¶ 9 Furthermore, we note that the second paragraph of Part 5, describing the owner or driver of the underinsured motor vehicle responsible for the accident, clearly has as its antecedent the owner or driver of the *motor vehicle,* mentioned, and even emphasized in the first paragraph. Under both the MVFRL and the policy at issue,

the definition of "motor vehicles" would include motorcycles.[1] Thus, an applicant for UIM coverage reading this policy provision would expect to be covered, minimally, when "struck" by an underinsured motor vehicle, however that phrase is interpreted.

¶ 10 Later in Part 5 of the policy, in the section entitled "**HOW WE WILL SETTLE A CLAIM (PART 5) LIMIT OF COVERAGE**," the policy provides:

If **you** or a **resident relative** insured under this part is in an accident:

1. In a **car** that is insured by this part—**we** will not pay more than the limit of coverage for this part shown on the Declarations applicable to that particular **car.**

2. In a **car** that is not insured by this part or while a pedestrian—**we** will not pay more than the limit of coverage for this part shown on the Declarations applicable to any one **car** insured under this part.

R.R. at 38a. (emphasis in original). Thus this section apparently allows coverage for insureds who are in cars that are not insured "by this part" [Part 5, applicable to UIM coverage], or who are pedestrians. Nevertheless, reading this section in *pari materia* with the section describing the insurer's obligations to the insured, the insured in a car not insured by Part 5 would only be covered if "struck" by an underinsured motor vehicle. The policy thus makes no distinction between a passenger of a car and a passenger on a motorcycle who is injured through the fault of the driver. Therefore, regardless of the type of vehicle involved, if the driver does not have sufficient insurance, the passenger can make no claim for underinsur-

ance benefits against her own Prudential policy. For example, if an automobile and a motorcycle collide, both having passengers who sustain serious injuries which exceed the liability limits of the policies of the respective vehicles, then both passengers will reasonably make a UIM claim against their own policy. Assume both passengers are insured by Prudential policies identical to that in the instant case. If the automobile driver is at fault, then the passenger in the automobile will not recover, but the passenger on the motorcycle will. If the motorcycle driver is at fault, then the automobile passenger will recover but the motorcycle passenger will not. Such a result is clearly contrary to the express purpose of the MVFRL. We therefore find the pertinent policy language to be ambiguous as applied to the facts of the instant case. As such, the language must be construed in favor of the insured.

■ ¶ 11 However, even if the language of this policy were not ambiguous, we also find the language of this policy to be at odds with the purpose of UIM coverage under the MVFRL and against the public policy considerations underlying the MVFRL. We stand by our assertion that "[a]lthough courts do not have a license to rewrite an insurance contract, the insurers do not have a license to rewrite statutes." *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.,* 746 A.2d 1118 (Pa.Super.1999).

■ ¶ 12 In *Kmonk–Sullivan v. State Farm Mutual Automobile Ins. Co.,* 746 A.2d 1118 (Pa.Super.1999) (*en banc* ), *appeal granted,* 565 Pa. 647, 771 A.2d 1285 (2001), this Court examined the public poli-

---

1. See **Definitions** section above. Also, under the MVFRL, a motor vehicle is defined as "a vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated upon rails." 75 Pa.C.S. § 102.

cy considerations underlying the MVFRL and stated in that case, "our focus in deciding whether to uphold an insurance policy exclusion, which operates to deny coverage to an injured party, is the factual circumstances of the particular case." *Kmonk–Sullivan*, at 1123, citing *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1240 (1994). "Contract provisions that are not in accord with public policy, and are not advantageous to the insured are particularly subject to a finding of invalidity." *Kmonk–Sullivan*, at 1123, citing *Allwein v. Donegal Mut. Ins. Co.*, 448 Pa.Super. 364, 671 A.2d 744 (1996) (*en banc*) (other citations omitted). "It is also presumed that the [l]egislature intends to favor the public interest as opposed to any private interest." *Kmonk–Sullivan*, at 1123, citing *Allwein* at 751. Therefore, "[i]n close or doubtful cases, we must interpret the intent of the legislature and the language of the insurance policy to favor coverage for the insured." *Kmonk–Sullivan*, at 1123, citing *Allwein* at 751.

¶ 13 In *Kmonk–Sullivan*, this Court was called on to determine whether the government vehicle exclusions in an automobile policy violated public policy. In order to guide our analysis in that case, we ascertained the legislative intent underlying the MVRFL. As we stated, "the MVFRL was enacted, in part, to establish a liberal compensatory scheme of underinsured motorist protection." *Id.* at 1123, citing *Marroquin v. Mutual Benefit Ins. Co.*, 404 Pa.Super. 444, 591 A.2d 290 (1991). "The policy of liberally construing the MVRFL is based upon the policy of indemnifying victims of accidents for harm they suffer on Pennsylvania highways." *Id.*, citing *Allwein* at 751. "Underinsured motorist insurance is purchased to protect oneself from ... drivers whose liability insurance purchasing decisions are beyond one's control." *Id.* at 1123, 671 A.2d 744, citing *Paylor, supra* at 1238. Before the enact-

ment of the MVFRL, drivers of automobiles were required to carry uninsured motorist coverage, but not underinsured motorist coverage. *Id.*, citing 40 P.S. §§ 1009.101–1009.701 (repealed 1984). Accordingly, a person involved in a car accident was in a better position if injured by a negligent driver who was uninsured, rather than one who had insurance but whose liability limits were inadequate. The legislature passed the MVFRL, in an attempt to rectify this situation, by requiring insurers to offer underinsured motorist coverage. *Id.*, citing 75 Pa.C.S. § 1731(a). The insureds in the present case, just as in *Kmonk–Sullivan*, are exactly the types of individuals whom UIM coverage was designed to protect—both cases involve individuals injured by a tortfeasor with inadequate insurance coverage. *Id.* at 1123.

¶ 14 The Appellee argues that because Appellant was riding as a passenger on a motorcycle, she should not be entitled to underinsured coverage because her own voluntary choices or action increased the risk of loss. We refuse to punish Appellant for riding on a motorcycle. If we were to uphold this exclusion, we would be, in effect saying that any time an insured motorist does anything to "increase the risk of loss," an insurer has the right to exclude him/her from coverage. By this rationale, what would prevent an insurer from denying UIM coverage to an insured motorist if he/she was not wearing a seatbelt by merely arguing his or her actions "increased the risk of loss"? Clearly, this result would fetter the rights of the insured and frustrate the intentions of the MVFRL.

¶ 15 As we stated in *Kmonk–Sullivan*, "the entire purpose of UIM coverage ... is to pass the risk of loss to the insurer when a tortfeasor cannot fully compensate

the insured for his injuries." *Id.* at 1125. We refuse to believe that Appellant somehow increased her risk of loss by taking a ride on a motorcycle. And, it would be against the policy of the MVFRL to allow an insurer to exclude this coverage because the insured was injured while she was a passenger in a two-wheeled motor vehicle, rather than a four-wheeled motor vehicle, in light of the fact that the insured's family voluntarily purchased UIM coverage and reasonably expected to be covered under this policy.

¶ 16 The cases referenced by the Appellee in support of its position that the Appellant's "voluntary choices" played a part in creating the risk of loss are distinguishable. For example, in *Paylor, supra,* a family car exclusion was upheld by our Supreme Court, under the limited facts of that case. *Paylor,* 536 Pa. 583, 640 A.2d 1234. In *Paylor,* the family car exclusion was upheld only because the plaintiff in that case was attempting to convert underinsured motorist coverage into liability coverage. *Id.* Also, in *Marino v. General Accident Ins. Co.,* 416 Pa.Super. 1, 610 A.2d 477 (1992), this Court upheld the exclusion from uninsured/underinsured motorist coverage when the insured vehicle was being operated to transport persons/goods for a fee, because insurance rates vary from passenger to commercial use, and this cost should be borne by those who utilize vehicles for commercial purposes.

¶ 17 We find instructive the analysis set forth in *Burstein v. Prudential Property and Casualty Insurance Company,* 742 A.2d 684 (Pa.Super.1999) (*en banc*), *appeal granted,* 563 Pa. 670, 759 A.2d 919 (2000), where this Court, sitting *en banc,* addressed the "regularly used non-owned" motor vehicle exclusion and the plurality found it to be void as against public policy. In *Burstein,* the plaintiff used a company-owned vehicle primarily for business purposes although she was permitted to drive it for personal use. *Id.* Her employer failed to notify her of the types of insurance coverage he had purchased for the vehicle, nor was she given the option to change such insurance coverage. Plaintiff, like Appellant's father in this case, had purchased UIM coverage on vehicles she owned. After an accident, she recovered from the tortfeasor's insurance policy, however, because the tortfeasor's insurance proved inadequate, plaintiff filed a claim for UIM coverage under her employer's policy. When she was informed that her employer did not have UIM coverage, she filed a claim for UIM benefits under her personal policy. Prudential denied this claim based on the policy exclusion for a "regularly used non-owned car" not insured under this policy. A panel of arbitrators found the exclusion violated public policy, the trial court affirmed and an appeal followed. A plurality of this Court concluded that the "regularly used non-owned car" exclusion was void as against public policy. *Id.* at 691. In reaching this decision, this Court found particularly persuasive the fact that plaintiff in that case, as in the present case, had done all she could to have UIM coverage as she carried it on her three personal vehicles; however, she could not influence, and did not know of her employer's decision not to have it on the company car. In that case, the plurality stated "the public policy we find most persuasive is that underinsured motorist (UIM) coverage is first-party coverage and therefore necessarily **follows the person, not the vehicle.**" *Burstein,* at 688, citing *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988) (*en banc* ) (emphasis added). "This means that if an individual purchases underinsured motorist coverage, that individual will be protected from negligent drivers with inadequate coverage regardless of the

vehicle in which he or she happens to be injured." *Id.* at 688, 535 A.2d 1145. Therefore, under the rationale set forth by this Court, in *Burstein,* voiding the exclusion in this case, like the "regularly used non-owned car" exclusion in that case, "furthers the aforementioned public policies by providing the greatest possible coverage to the [plaintiffs], by compensating them for injuries caused by a tortfeasor who had inadequate coverage, and by allowing them to recover underinsured motorist coverage they had specifically paid for under their policy with [Prudential]." *Id.* at 688–689.

¶ 18 We find the reasoning cited by the plurality in *Burstein* persuasive and applicable to the instant case. Furthermore, we believe that allowing Prudential to uphold such exclusion is void as against public policy. Appellant in this case was injured while a passenger on a motor vehicle that she did not own, and the tortfeasor (who happened to be the driver) had inadequate coverage to compensate Appellant for her injuries. She is precisely the type of individual meant to be protected by underinsured coverage. Her father elected to pay additional premiums for underinsured motorist coverage, and he had reasonable expectations that he would receive the benefit for which he was paying. (See *Nationwide Mutual Ins. Co. v. Cosenza,* 258 F.3d 197, 2001 WL 811122 (3d Cir.2001)) (where the Third Circuit Court of Appeals stated that under Pennsylvania law, public policy is violated when an insurer is permitted to evade payment of UIM benefits under policy conditions, where an insured has a **reasonable expectation** of UIM coverage by virtue of paying optional premium for coverage for injuries attributable to underinsured tortfeasor). (emphasis added). That his daughter was injured while riding on a two-wheeled motor vehicle rath-

er than a four-wheeled motor vehicle is of little import here.

¶ 19 Accordingly, we believe the policy language is so ambiguous as to preclude a finding in favor of Prudential, and we believe it is void as against the public policy considerations set forth by the legislature when it adopted the MVFRL.

¶ 20 Therefore, we reverse the trial court's denial of the Petition to Vacate the Arbitrator Award. Jurisdiction relinquished.

¶ 21 BECK, J., files a Dissenting Opinion.

BECK, J., Dissenting.

¶ 1 The majority concludes that the instant insurance policy provisions are ambiguous, contrary to the purposes of the relevant statutes, and against public policy. I respectfully dissent.

¶ 2 The interpretation of an insurance contract is a matter of law for the courts to decide. *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994). In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. *Id.* A clear and unambiguous contract provision must be given its plain meaning, unless to do so would be contrary to a clearly expressed public policy. *Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154, 1157 (1994) (exclusion from UIM coverage for resident relative who was driving his own uninsured vehicle was valid and enforceable under the MVFRL; legislative purpose was to decrease number of uninsured drivers).

¶ 3 The relevant policy provision states: "If you have this coverage [Underinsured Motorist Coverage], we will pay up to our limit of liability for bodily injury that is covered under this part when an insured (whether or not occupying a car) is struck

by an underinsured motor vehicle ...." There was no allegation in this case that appellant was "struck" by an underinsured motor vehicle. Coverage under the policy is otherwise limited to injuries caused by cars, the definition of which clearly does not include motorcycles. I therefore agree with the trial court's conclusion that these policy provisions clearly and unambiguously exclude coverage under the facts of this case.

¶ 4 Even clear and unambiguous insurance policy language may conflict with an applicable statute, and in such situations, we cannot give effect to the contractual provision. *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 746 A.2d 1118, 1121 (Pa.Super.1999), *appeal granted,* 565 Pa. 647, 771 A.2d 1285 (2001). Appellant argues, and the majority concludes, that the policy language in this case is contrary to the relevant statutes, and void as against public policy.

¶ 5 The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1731–1738 (MVFRL), is to be construed liberally to afford the greatest possible coverage to injured claimants. *Danko v. Erie Ins. Exchange,* 428 Pa.Super. 223, 630 A.2d 1219, 1222 (1993), *aff'd,* 538 Pa. 572, 649 A.2d 935 (1994). In close or doubtful cases, a court should resolve the meaning of insurance policy provisions or the legislative intent in favor of coverage for the insured. *Id.* However, there is no doubt that, although underinsured motorist coverage must be *offered* by insurers, 75 Pa.C.S. § 1731(a), several different kinds of exclusions from such coverage have nonetheless been upheld by our courts. *See, e.g., Nationwide Ins. Co. v. Cummings,* 438 Pa.Super. 586, 652 A.2d 1338 (1994) (exclusion

from uninsured/underinsured motorist coverage for passenger whose driver did not have permission to use vehicle was upheld); *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 630 A.2d 28 (1993) (exclusion for antique car policy upheld); *Marino v. General Accident Ins. Co.,* 416 Pa.Super. 1, 610 A.2d 477 (1992) (exclusion from coverage where vehicle was used to transport persons or property for a fee upheld). The MVFRL does not prohibit an insurer from limiting underinsured motorist coverage to damage caused by cars only.[2]

¶ 6 The majority nonetheless concludes that Prudential's policy language is void as against public policy.

> "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest ... It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy] ...."

*Paylor, supra* at 586–87, 640 A.2d at 1235 (citations omitted) (family car exclusion does not violate public policy). However, it is only in the clearest of cases that a court may make an alleged public policy the basis of a judicial decision. *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1010 (1998).

¶ 7 The purpose of underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and have inadequate coverage to compensate

---

**2.** The fact that the form of Prudential's insurance policy was approved by the insurance commissioner, though certainly not conclusive, has been declared a "significant" factor in determining the validity of policy exclusions. *Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 648 A.2d 755 (1994).

for the injuries caused by his negligence. *Paylor, supra* at 585–89, 640 A.2d at 1235–36. But our cases do not clearly set forth a public policy in favor of the type of coverage here denied by Prudential. Indeed, the cases indicate that certain kinds of conduct by the insured increases the risk of injury such that denial of coverage is justified. For example, certain exclusions may not be against public policy where the insured's own voluntary choices or actions increase the risk of loss. Insureds in such cases have a "part in creating the risk that contributed to the loss," and have "control over the identity of the tortfeasor that caused their injuries." *Kmonk–Sullivan, supra* at 1125.

¶ 8 Although a policy exclusion from underinsured motorist coverage for government owned vehicles was held to be against public policy because it penalized the insureds "for a factor beyond their control, ... the identity of the tortfeasor," such reasoning is not applicable to the denial of coverage in this case. *Id.* at 1126. This case, involving a passenger on a motorcycle, is more analogous to cases where exclusions were upheld by our courts in part because the insured's own voluntary choices or action increased the risk of loss. *Id.* at 1125. I would therefore hold Prudential's policy provisions, which take into account the increased risks occasioned by motorcycle riding, are not contrary to public policy, and would affirm the trial court's decision denying underinsured motorist coverage to appellant.