J. A16020/17

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

IN RE:  ESTATE OF ADAM R. CHERRY,  :    IN THE SUPERIOR COURT OF
DECEASED                         :        PENNSYLVANIA
                                 :
APPEAL OF:  STACI FULTON         :        No. 1365 WDA 2016

Appeal from the Order Entered August 24, 2016,
in the Court of Common Pleas of Elk County
Orphans' Court Division at No. OC-2026-12646

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         FILED MARCH 26, 2018

Staci Fulton ("Mother") appeals the order of the Court of Common Pleas of the Fifty-Ninth Judicial District of Pennsylvania -- Elk County Branch that directed the Register of Wills of Elk County to issue letters of administration on the Estate of Adam R. Cherry, deceased ("Estate"), to Albert Cherry ("Father").  After careful review, we reverse and remand for further proceedings.

Adam R. Cherry ("Decedent") was the son of Mother and Father who were divorced.  Father had primary physical custody of Decedent.  Mother and Father shared legal custody of Decedent.  On January 7, 2016, Decedent died in a fire at Father's residence located at 698 Shelvey Summit Road on State Route 948 in Fox Township, Elk County, Pennsylvania.

_____

* Retired Senior Judge assigned to the Superior Court.

On or about February 2, 2016, Mother petitioned for letters of administration for Decedent's Estate with the Register of Wills of Elk County ("Register"). On February 4, 2016, the Register issued to Father a citation to show cause why letters of administration should not be granted to Mother. On February 25, 2016, Father answered and asserted that the Register should issue him the letters because Decedent resided with Father his entire life. He further alleged as new matter that he was an intestate heir, as well as the primary physical and legal custodian of Decedent, so he was entitled to the grant of letters. On March 11, 2016, Mother replied to new matter and averred that at the time of Decedent's death, Mother and Father shared legal custody. Mother also alleged that she intended to pursue a wrongful death/survival action as Administratrix of the Estate and Father would be a material factual witness in the action.

On May 12, 2016, the Register concluded, following a hearing, that Father was not disqualified as unfit to administer the Estate. The Register also concluded that Father would best administer the Estate. The Register dismissed Mother's petition. (Register of Wills' Findings of Fact, Conclusions of Law and Decree Resolving Petitioner, Staci Fulton's Contested Application for the Grant of Letters of Administration, 5/12/16, Conclusions of Law Nos. 1-3 at 7-8.)

On May 27, 2016, Mother appealed the Register's decision to the trial court and moved to have Father removed as Administrator of the Estate and replaced by Mother.

On June 6 2016, the trial court ordered that a hearing de novo be held on a rule to show cause as to why Father should not be removed as Administrator of the Estate of Decedent.

The trial court held the hearing on August 23, 2016. Trooper Patrick S. McMackin ("Trooper McMackin") of the Pennsylvania State Police testified on behalf of Mother. Trooper McMackin arrived at the site of the fire as a criminal investigator. (Notes of testimony, 8/23/16 at 8.) Trooper McMackin explained that the deceased individuals were Decedent and Rhonda Kline ("Ms. Kline"), Father's fiancé, and they were found on the first floor. (Id. at 9-10.) Jenna Cherry, another child of Mother and Father, told Trooper McMackin that there were no smoke detectors in the house. (Id. at 11.)

Trooper David M. Powell ("Trooper Powell") of the Pennsylvania State Police and currently assigned as a deputy fire marshal testified that he was dispatched to the fire on January 7, 2016. He talked to Trooper Stewart who arrived at the scene before he did, performed a cursory inspection around the outside of the house, talked with other troopers, and talked with the fire chief. (Id. at 20-21.) Trooper Powell determined that a wood/coal burning stove in the basement of the residence caused the fire. Trooper Powell opined that the heat was too close to the wood joists. (Id. at 22-23.) Decedent was

sleeping in the bedroom in the basement when the fire began. (Id. at 25.) Trooper Powell did not find any carbon monoxide detectors, fire extinguishers, smoke detectors, or smoke alarms in the house. (Id. at 26-27.)

Mother read from Decedent's death certificate, which indicated that the causes of Decedent's death were carbon monoxide, smoke inhalation, and house fire. (Id. at 35-36.) Mother sought letters of administration on behalf of decedent to open an estate to pursue a cause of action for Decedent's death. (Id. at 36-37.)

Mother then called Father as a witness on cross-examination. Father testified that the owner of the property where the fire occurred was Ron Kline ("Kline"), who was the father of Ms. Kline and the grandfather of the child Father and Ms. Kline had together. (Id. at 40.) Father testified that there were two smoke detectors at the home. (Id. at 42.) Father also testified that there were no smoke detectors in Decedent's bedroom. (Id. at 43.) On direct examination, Father testified that he saw Decedent on the landing to the basement during the fire. Father shouted, "Get out. Fire. Now." (Id. at 45.) Father testified that Decedent then "headed back towards his room." (Id.)

Father called Corporal Greg A. Agosti ("Corporal Agosti") of the Pennsylvania State Police as a witness. Corporal Agosti was the supervisor for the overall incident at the scene of the fire and assisted Trooper Powell with the fire investigation. (Id. at 53.) Corporal Agosti testified within a

reasonable degree of scientific certainty that the fire was an accident. (Id. at 54-55.)

On August 23, 2016, the trial court directed that the Register issue letters of administration on Decedent's Estate to Father.

On September 13, 2016, Mother filed a notice of appeal to this court. On September 15, 2016, the trial court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On October 3, 2016, Mother complied with the order. On January 17, 2017, the trial court filed its 1925(a) opinion dated January 11, 2017.

Mother raises the following issues for this court's review:

> A.  Whether the [trial] Court committed error and/or abused its discretion in directing the Register of Wills of Elk County to issue letters of administration on the Estate of [Decedent] to [Father] when a conflict of interest exists between [Father] and both the estate as well as the estate's beneficiaries because the estate and/or its beneficiaries have grounds to file claims and/or lawsuits against [Father] for his negligence and/or conduct surrounding [Decedent's] death?

> B.  Whether the [trial] Court erred and/or abused its discretion in appointing and/or failing to remove [Father] as Administrator of the Estate of [Decedent], because the interests of the estate are likely to be jeopardized by his continuation in office, because [Father's] personal interest is in conflict with the interests of the estate to the point where the two interests cannot be served at the same time and/or because [Father] has a claim of interest hostile to the estate?

C. Whether the [trial] Court erred and/or abused its discretion in failing to remove [Father] as Administrator of the Estate of [Decedent], when removal was necessary to protect parties in interest?

Mother's brief at 6-7.

> Our standard of review of the findings of an Orphans' Court is deferential.
>
>> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
>> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> In re Estate of Harrison, 745 A.2d 676, 678-79 (Pa.Super. 2000), appeal denied, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." In re Estate of Luongo, 823 A.2d 942, 951 (Pa.Super.

> 2003), appeal denied, 577 Pa. 722, 847 A.2d 1287 (2003).
>
> In re Estate of Whitley, 50 A.3d 203, 206-207 (Pa.Super. 2012).
>
> This Court's standard of review of questions of law is de novo, and the scope of review is plenary, as we may review the entire record in making our determination. Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159, 1164 n. 5 (2004). When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law. Kmonk-Sullivan v. State Farm Mutual Automobile Ins. Co., 746 A.2d 1118, 1120 (Pa.Super.1999) (en banc).

In re Fiedler, 132 A.3d 1010, 1018 (Pa.Super.), appeal denied, 145 A.3d 166 (Pa. 2016).

Initially, Mother contends that the trial court committed error and/or abused its discretion when it directed the Register to issue letters of administration to Father when a conflict of interest exists between Father and both the Estate and the Estate's beneficiaries because the Estate and/or its beneficiaries have grounds to file claims and/or lawsuits against Father for his conduct surrounding Decedent's death.

Specifically, Mother asserts that it was Father's decision to have Decedent reside at 698 Shelvey Summit Road, the site of the fire. More directly related to the fire and resulting death of Decedent, Mother further asserts that Father caused his son to sleep in the basement in one of two bedrooms that were separated from each other by hanging sheets from the ceiling as dividers with no fire retardant door. The source of the fire, the

wood/coal burning stove, was also in the basement. According to the record, there were no smoke detectors,[1] carbon monoxide detectors, fire extinguishers, or any other type of advance warning system present in the basement.

It is Mother's desire to serve as Administratrix of Decedent's Estate, so that she can pursue wrongful death and survival claims[2] against Father for

---

[1] Mother acknowledges that Father testified that the home had two smoke detectors. However, Father also testified that he did not know if they were operational. Notes of testimony, 8/23/16 at 42.

[2] Section 8301 of the Judicial Code provides in pertinent part:

§ 8301. Death Action

(a) General rule.--An action may be brought under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) Beneficiaries.--Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of

Decedent's untimely demise. She argues that she has a cause of action for negligence where death was caused and/or contributed to by the lack of smoke detectors in a residence.

Although factually distinguishable, in In re Estate of Westin, 874 A.2d 139 (Pa.Super. 2005), this court addressed the issue of a conflict of interest between a personal representative of an estate, and the estate and/or its beneficiaries. In Westin, Paul D. Zavarella, Esq. ("Attorney Zavarella"), was appointed the executor of the estate of Jonathan Mills Westin, deceased. Attorney Zavarella filed his first and final account of the estate. The orphans' court issued a decree and schedule of distribution of the estate's remaining assets of $382,796. Of this amount, $89,469 was apportioned to 18 creditors of the estate with most of the remainder going to the Internal Revenue Service. After several months, the distribution of the estate assets still had not occurred. In response to a petition from the creditors, the orphans' court

---

the deceased person under the statutes of this Commonwealth.

42 Pa.C.S.A. § 8301(a-b).

Section 8302 of the Judicial Code provides:

§ 8302. Survival action

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

42 Pa.C.S.A. § 8302.

issued a citation to Attorney Zavarella to show cause why distribution should not be made in accordance with the earlier decree. At the hearing, the orphans' court and the creditors learned that the office manager of the law firm that represented the estate had embezzled all but approximately $10,000 of the estate's funds.

This court determined:

> Sufficient reason for removal of a fiduciary has been found when the fiduciary's personal interest is in conflict with that of the estate, such that the two interests cannot be served simultaneously. The reasons for removal of a fiduciary must be clearly proven. However, proof of a conflict of interest can be inferred from the circumstances. When a conflict of interest is apparent from the circumstances, bad faith or fraudulent intent on the part of the fiduciary need not be proven.
>
> In the present case, all parties agree that at least $370,000 from the Westin estate was embezzled from an account maintained by executor Zavarella's law firm, Dice & Associates. This fact was revealed to the court in February 2003, but the record reveals no evidence of any attempts by the executor to recover these funds for the estate. By any reasonable measure, the estate has grounds to file a claim against Zavarella and Dice & Associates to recover its assets. Zavarella would then be in the position of representing the estate, in his capacity as executor, in a claim against himself and his law firm. A conflict of interest between Zavarella and the estate is readily apparent from these circumstances. Therefore, Zavarella should be removed as executor of the Westin estate and a new administrator should be appointed.

Id. at 143 (citations and footnote omitted).

Mother argues that there is a conflict between Father acting as administrator and the Estate has grounds to file a claim against Father for wrongful death. She also argues that there would be a conflict because one of Father's children is the grandchild of Kline, the owner of the property located at 698 Shelvey Summit Road.

Here, the conflict of interest is apparent because the Estate has a potential cause or causes of action against Father for Decedent's death in the fire. Similarly, Father's connection to Kline, the father of Father's late fiancé, grandfather of one of Father's children, and owner of the property where Decedent perished, could also serve as a conflict when possibly taking action against Kline, as the owner of the property.

Based on the record and pertinent case law, we conclude that the trial court erred when it determined that Father should serve as administrator of the Estate due to the conflicts of interest Mother raised.

Order reversed and case remanded to the trial court to conduct a hearing to determine a proper administrator of the Estate.[3] Jurisdiction relinquished.

---

[3] We need not address the other two issues Mother raises.

J. A16020/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary



Date: 3/26/2018