Kristin **RICHMOND,** Appellant,

v.

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued March 2, 2004.

Filed Aug. 24, 2004.

Michael J. Piosa, Allentown, for appellant.

Charles W. Craven, Philadelphia, for Prudential, appellee.

Scott B. Cooper, Harrisburg, for Pennsylvania Trial Lawyers Ass'n, Amicus Curiae.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT, STEVENS, ORIE MELVIN, LALLY–GREEN, TODD, GANTMAN, McCAFFERY and PANELLA, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This case is before us on remand from our supreme court. On December 27, 2001, a three-judge panel of this court, with one judge dissenting, filed an opinion reversing an order of the Court of Common Pleas of Lehigh County.[1] The Common Pleas Court order affirmed a 2–1 decision by a board of arbitrators finding in favor of Prudential Property and Casualty Insurance Company ("insurer"). This court reversed, finding that certain policy provisions in insurer's car insurance policy violated the public policy of this Commonwealth, and also finding some of the policy's provisions ambiguous. *Richmond v. Prudential Property & Cas. Ins. Co.*, 789 A.2d 271, 274 (Pa.Super.2001), *appeal granted*, 571 Pa. 708, 812 A.2d 1230 (2002).

¶ 2 On December 31, 2002, our supreme court decided *Prudential Property & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002), a case requiring the court to determine the validity of one of the same policy provisions at issue in *Richmond*.[2] The *Colbert* court found that the provision in the Prudential policy defining "Who Is Insured" "impermissibly narrows and conflicts with the plain language of the MVFRL."[3] *Id.* at 89, 813 A.2d at 751. On April 25, 2003, our supreme court remanded *Richmond* to this court for reconsideration in view of its decision in *Colbert, supra. Richmond v. Prudential Property & Cas. Ins. Co.*, 573 Pa. 140, 821 A.2d 1246 (2003). Insurer then filed an unopposed application requesting that the supreme court clarify its order by vacating the opinion and order the three-judge panel entered in *Richmond;* however, the supreme court denied the application by order entered June 12, 2003.

¶ 3 Next, insurer filed an application for determination by the court *en banc*, claim-

---

1. Judge Brosky authored the majority opinion, which Judge Ford Elliott joined, while Judge Beck dissented.

2. *Colbert* came before the supreme court on a Petition for Certification of Questions of Law from the United States Court of Appeals for the Third Circuit. *Colbert, supra* at 84, 813 A.2d at 748. The questions were:

   (1) whether the definition of 'insured' in the automobile insurance policy of Prudential Property and Casualty Insurance Company impermissibly narrows and conflicts with the statutory definition of 'insured' as contained in Section 1702 of Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701–1799.7; and (2) whether the 'other household vehicle' exclusion contained in the Prudential policy is void as against the public policy of the MVFRL.

   *Id.* at 84–85, 813 A.2d at 748–749. The policy at issue in this case contains the same definition of "insured" the *Colbert* court invalidated.

3. Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701–1799.7.

ing the case raised issues regarding the propriety of both *Richmond, supra;* and *Prudential Property & Cas. Ins. Co. v. Ziatyk,* 793 A.2d 965 (Pa.Super.2002) (finding that provisions in Prudential's policy, which allowed Prudential to deny UIM benefits to a passenger in a rental truck with a load capacity in excess of one ton, directly conflicted with § 1731(c) of the MVFRL, discussed more fully *infra* ), *appeal denied,* 570 Pa. 699, 809 A.2d 905 (2002), and *appeal denied,* 572 Pa. 708, 813 A.2d 843 (2002). (Insurer's application for determination by the court *en banc,* 8/6/03 at 1.) This court granted insurer's application for *en banc* review.

¶ 4 The facts of this case are not in dispute. On April 23, 1995, claimant suffered injuries while riding as a passenger on a motorcycle operated by a third party, the tortfeasor. Claimant recovered the available policy limits under the tortfeasor's liability insurance policy; however, this recovery did not fully compensate claimant for her injuries. Claimant, who did not own a motor vehicle and who was residing with her father ("father") at the time of the accident, therefore made a claim for underinsured motorist coverage under the Prudential policy father purchased to cover his automobiles. Insurer ostensibly denied coverage because claimant was occupying a motorcycle, not a car, when she was injured.

¶ 5 The parties submitted their dispute to arbitration pursuant to the terms of the policy governing disputes regarding UIM coverage. (*Id.* at 9.) In a two-to-one decision, the panel of arbitrators found in favor of insurer. (Petition to Vacate Arbitration Award, 3/31/99 at Exhibit B, R. at 1.) The majority found the contract provisions clear and unambiguous. (*Id.* at 1.) Additionally, the arbitration majority found permissible the limitation or exclusion of certain UM/UIM coverage based upon ap-

pellate court cases interpreting other contract exclusions so long as the exclusions were clear and unambiguous, had been approved by the Insurance Commissioner, and did not violate public policy. (*Id.* (citations omitted).)

¶ 6 The dissenting arbitrator, in contrast, found the insurer's interpretation of the policy provisions at issue contrary to the MVFRL and public policy. According to the dissenting arbitrator, insurer's interpretation would either limit UIM coverage to insureds only when they were using a car insured under the policy, or to insureds who were occupying a car, but would preclude UIM coverage to insureds who were injured while occupying trucks, buses, taxicabs, motor homes, and/or motorcycles. (*Id.* at Exhibit B, dissenting opinion at 3.)

¶ 7 Claimant then filed a petition to vacate the arbitration award, averring that the arbitration award was "unjust, inequitable, unconscionable, contrary to law, contrary to the specific and unambiguous language of the Motor Vehicle Financial Responsibility Law and as such, unenforceable and void as against public policy." (Petition to Vacate Arbitration Award, 3/31/99 at 3, R. at 1.) According to claimant's brief in support of the petition, the MVFRL requires insurers to offer UIM coverage, which "shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." (Claimant's brief in support of Petition to Vacate Arbitration Award, 2/9/00 at 2, quoting 75 Pa.C.S.A. § 1731(c), R. at 8.) Thus, according to claimant, insurer's policy provisions limiting UIM benefits to insureds who are using cars or who are pedestrians conflicts with the MVFRL's requirement that insurers offer UIM benefits to protect those persons "who suffer

injury arising out of the maintenance or use of *a motor vehicle* and [who] are legally entitled to recover damages therefor *from owners or operators of underinsured motor vehicles*." 75 Pa.C.S.A. § 1731(c) (emphasis added).

¶ 8 Insurer, in contrast, based its denial of claimant's UIM claim upon language in the policy that purportedly excluded UIM coverage to an occupant of a motorcycle. (Insurer's brief in opposition to the petition to vacate the arbitration award ("insurer's brief"), 2/28/00 at 1, R. at 9.) According to insurer, father purchased the car policy "to cover his cars, not to provide UM/UIM benefits for every possible vehicle he or his resident relatives may ever occupy." (*Id.* at 11.) Insurer further argued that "it goes without saying here that occupying a motorcycle constitutes a fa[ ]r greater risk factor than occupying a car and imposing coverage for such a vehicle, which is not even owned by the insured, would impose an 'onerous burden' on Prudential in this matter." (*Id.*)

¶ 9 The parties presented their briefs to the trial court, which denied the petition to vacate the arbitration award. As noted *supra,* a divided panel of this court reversed the trial court, and our supreme court granted allocatur and ultimately remanded for our consideration in view of *Colbert, supra.* On remand, claimant raises the following issues:

A. Whether a motor vehicle insurance policy violates the plain language of the Motor Vehicle Financial Responsibility Law and/or public policy when it denies underinsured motorist coverage to a resident relative of a named insured who is injured while riding in a motor vehicle other than a car.

B. Whether Prudential's motor vehicle insurance policy language provides for underinsured motorist coverage in this case, or at the least, is am-

biguous and must be construed against the insurer/drafter and in favor of the insured.

Claimant's brief on remand at 3. Because we find that the restrictions on UIM coverage in insurer's policy directly conflict with the MVFRL's requirements, we find those restrictions invalid. As a result, we need not reach claimant's second issue.

■ ¶ 10 Prior to reaching the merits of this case, however, we must address insurer's claim that both the trial court and this court exceeded the scope of review of the arbitrators' award and therefore lacked jurisdiction. Insurer correctly argues that the scope of review of a common law arbitration award, such as the award at issue in this case, is circumscribed by 42 Pa. C.S.A. § 7341, which provides:

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

*Id.*

¶ 11 Insurer relies on our supreme court's decision in *Borgia v. Prudential Ins. Co.,* 561 Pa. 434, 750 A.2d 843 (2000), in which that court reiterated the long-standing principle that a common law arbitration award is not reviewable for an error of law. *Id.* at 441, 750 A.2d at 847. In *Borgia,* our supreme court, on review, found that this court had exceeded the scope of its review, holding, "[I]t is for the arbitrators to decide whether a particular claimant is a 'covered person,' and their decision in the matter will not be reversed for an error of law." *Id.* at 448, 750 A.2d at 851.

¶ 12 We find the first issue in this case distinguishable from *Borgia*, as claimant herein did not limit her argument to a contention that the arbitrators erred as a matter of law; rather, in her petition to vacate, she asserted that the award was "unjust, inequitable, unconscionable, contrary to law, contrary to the specific and unambiguous language of the Motor Vehicle Financial Responsibility Law and as such, unenforceable and void as against public policy." (Petition to Vacate Arbitration Award, 3/31/99 at 3, R. at 1.)

¶ 13 Our supreme court clearly established the scope of review of a common law arbitration award ten years ago in *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994). In *Hall*, Amica denied Hall's claim for uninsured motorist benefits based upon a territorial limitation in its policy. Hall sought arbitration under a provision in the policy allowing either party to invoke **statutory** arbitration pursuant to 42 Pa.C.S.A. §§ 7301–7320. Hall sought review of the arbitration award, however, pursuant to 42 Pa.C.S.A. § 7314(a)(1)(i), which authorizes a court to vacate a statutory arbitration award for reasons permitted under **common law** arbitration.[4]

¶ 14 The *Hall* court observed that our supreme court in *Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 454 A.2d 973 (1982), had adopted a rule announced by this court:

'Thus the rule, to which all the cases conform, is that where the application or construction of the [insurance] clause is at issue the dispute is within the exclusive jurisdiction of the arbitrators; **the courts will take jurisdiction only where the claimant attacks a particular provision of the clause itself as being contrary to a constitutional, legislative, or administrative mandate, or against public policy or unconscionable.** In *Davis v. Government Employees Insurance Company*, 500 Pa. 84, 454 A.2d 973 (1982), this Court adopted the [superior court's] rule regarding the authority to reject an [insurance] clause as against public policy.'

*Hall, supra* at 342, 648 A.2d at 757–758, quoting *Azpell v. Old Republic Ins. Co.*, 526 Pa. 179, 182–184, 584 A.2d 950, 951–952 (1991). As the *Hall* court concluded, "In short, a court has the power to review an arbitration award which is based on the declaration of an insurance policy clause to be void as against public policy . . . ." *Id.* Accord *Burstein v. Prudential Property & Cas. Ins. Co.*, 570 Pa. 177, 182, 809 A.2d 204, 206 (2002), citing *Hall, supra* (noting that an appellate court is empowered to review an arbitration award that declares an insurance policy clause void as violative of public policy). *See also Midili v. Erie Ins. Group*, 746 A.2d 1126, 1127 (Pa.Super.2000) (*en banc* ) (reversing the decision of a panel of arbitrators and finding that a government vehicle exclusion in an automobile insurance policy violated the MVFRL and was against public policy), *affirmed sub nom. Kmonk–Sullivan v. State Farm Mut. Automobile Ins. Co.*, 567 Pa. 514, 788 A.2d 955 (2001);[5] *Prudential*

---

4. Unlike common law arbitration awards, which, as set forth *supra*, are subject to limited review, 42 Pa.C.S.A. § 7314, governing statutory arbitration, permits a broader scope of review.

5. It is not clear from the trial court's or arbitrators' decision in *Midili* whether common law or statutory arbitration governed as both refer to "Underinsured Motorist Arbitration." *Midili v. Erie Ins. Exchange*, Court of Common Pleas of Washington County No. 97–3319, trial court opinion, 10/22/97 at 2 and arbitrator's opinion incorporated by reference therein, R. at 3. Where statutory arbitration is not specified, however, courts will assume that common law arbitration applies. *Snyder*

*Property & Cas. Ins. Co. v. Stein,* 453 Pa.Super. 227, 683 A.2d 683, 684–685 (1996) (applying the *Hall* court's analysis to a common law arbitration award). Having determined that this court has jurisdiction to review claimant's first issue, we proceed to that issue.

¶ 15 As we have already indicated, our supreme court remanded this case for our consideration in view of its decision in *Colbert, supra,* in which the *Colbert* court invalidated the identical definition of "Who Is Insured" found in the policy herein at issue because it "impermissibly narrows and conflicts with the plain language of the MVFRL." *Colbert, supra* at 89, 813 A.2d at 751. In *Colbert,* Adam Colbert, who was residing with his parents, was injured by a third party tortfeasor while driving his car, on which he carried both UM and UIM insurance. *Id.* at 85, 813 A.2d at 749. Adam settled with the tortfeasor and then recovered the maximum amount of UIM coverage available under his policy with State Farm.

¶ 16 Not having been fully compensated for his injuries, Adam next sought to recover under his parents' policy with Prudential. Prudential denied coverage on two bases: 1) Adam was not an insured under the definition of "insured" in the policy and set forth *infra because he was not driving a car specifically insured under the policy;* and 2) the "other household vehicle" exclusion in the policy expressly precluded coverage for named insureds and/or resident relatives who were using another owned vehicle at the time of the accident. *Id.* (emphasis added).

¶ 17 The MVFRL defines an "insured" as "Any of the following":

(1) An individual identified by name as an insured in a policy of motor vehicle liability insurance.

*v. Cress,* 791 A.2d 1198, 1200 (Pa.Super.2002)

(2) If residing in the household of the named insured:

(i) a spouse or other relative of the named insured; or

(ii) a minor in the custody of either the named insured or relative of the named insured.

75 Pa.C.S.A. § 1702, Definitions. Thus, Adam, who was residing with his parents at the time of the accident, fell within the definition of "insured" for purposes of the MVFRL.

¶ 18 The Prudential policy, in contrast, provides:

**DEFINITIONS**

**CAR**

A **car** is a private passenger automobile, station wagon, jeep-type, or van with four wheels which is designed for use mainly on public roads. A pick-up truck with four or six wheels and a load capacity of one ton or less is also a **car**.

. . . .

**MOTOR VEHICLE**

A **motor vehicle** is a self-propelled land vehicle which is required to be registered and licensed by the laws of **your** state for use on public roads.

Prudential Car Policy, Parts 1, 2 & 3 at Definitions, p. 2, R. at 7 Exhibit A (emphasis in Policy).

¶ 19 Part 2 of the Policy, addressing medical payments "IF YOU ARE IN-JURED IN A CAR ACCIDENT . . .", provides in relevant part:

**WHO IS INSURED (PART 2)**

**IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)**

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

(citations omitted).

Other people are insured while using **your car** or a substitute car covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

**IN A NON–OWNED CAR**

**You** and a **resident relative** are insured while using a **non-owned car.** The owner must give permission to use it. It must be used in the way intended by the owner.

. . . .

**HIT BY A MOTOR VEHICLE**

**You** and a **resident relative** are insured if hit by a **motor vehicle** while a pedestrian.

*Id.* at p. 10, Who Is Insured (Part 2) (emphasis in Policy).

█ ¶ 20 The *Colbert* court therefore invalidated the definition of insured in the Prudential policy because it "provide[d] coverage of lesser scope than the MVFRL requires." *Colbert, supra* at 89, 813 A.2d at 751. As our supreme court stated, " '[S]tipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws.' " *Id.,* quoting *Allwein v. Donegal Mut. Ins. Co.,* 448 Pa.Super. 364, 671 A.2d 744, 752 (1996) (*en banc* ), *appeal denied,* 546 Pa. 660, 685 A.2d 541 (1996), quoting George J. Couch, Couch on Insurance 2d (Rev. ed.) § 13.7 at 827 (1984).

¶ 21 Similarly, in this case, claimant falls within the MVFRL's broader definition of an insured because she was residing with her father, a named insured, at the time of the accident. Insurer nonetheless continues to assert that "[t]he car insurance policy [at issue in this case] provided UIM coverage to insureds who were injured while pedestrians or while occupying *certain cars,* but not while riding someone else's motorcycle or other motor vehicle,

which did not qualify as a covered car." (Insurer's brief on remand at 17 (emphasis added).) Those "certain cars" are the cars specifically listed as covered cars in the insurance policy. (*Id.* at 21.)

¶ 22 Recognizing that the *Colbert* court rejected its limited definition of who is an insured, insurer focuses on the second question answered in *Colbert;* whether the "other household vehicle" exclusion contained in the policy is void as against the public policy of the MVFRL. According to insurer, the *Colbert* court's affirmance of the exclusion supports the long line of cases that have consistently upheld exclusions limiting the *portability* of UIM coverage. (*Id.* at 29–44.) Insurer therefore argues that claimant in this case cannot recover because she was not using *any* car but was instead a passenger on a motorcycle.

¶ 23 Likewise, insurer argues *Ziatyk, supra* was incorrectly decided because Ziatyk was not in a car but was a passenger in a rental truck with a load capacity in excess of one ton. *Ziatyk,* 793 A.2d at 968 (relying on our supreme court's decision in *Kmonk-Sullivan, supra* finding the government vehicle exclusion invalid, and holding that provisions in Prudential's policy, which allowed Prudential to deny UIM benefits to a passenger in a rental truck with a load capacity in excess of one ton, directly conflicted with § 1731(c) of the MVFRL). According to insurer, it should not be forced to underwrite the risks associated with using *any* vehicles of which it is not aware.

¶ 24 Thus, the real issue is not that claimant was a passenger on a motorcycle or that Ziatyk was a passenger in a rental truck; rather, the issue for insurer is that both were passengers on or in a vehicle, car or otherwise, that was not covered under the Prudential policy. As insurer claims in its brief, "Under those terms of the Prudential car policy's UIM coverage

part, insureds such as Richmond had UIM coverage for bodily injury caused by any underinsured motorist whenever the insureds were using a ***covered car*** or [ ] whenever they were pedestrians." (Insurer's brief on remand at 21 (emphasis added).) Continuing, insurer states:

Although those terms of the Prudential car policy did not restrict coverage based on the identity of the underinsured motorist, they did restrict coverage based on the particular risks for which the policy was created and approved: the insured's being injured by an underinsured motorist while using a covered car or while a pedestrian. ***However, the motorcycle on which Richmond rode was not a covered car, and Richmond was not injured while she was a passenger in a covered car or a pedestrian.***

*Id.* (emphasis added).

¶ 25 This is the identical issue the *Colbert* court rejected when it held that "the restrictive definition of 'insured' within the Prudential policy impermissibly narrows and conflicts with the plain language of the MVFRL." *Colbert, supra* at 89, 813 A.2d at 751. We therefore find that the definition of insured in this case, as in *Ziatyk, supra,* conflicts with the plain language of the MVFRL and is therefore void.

■ ¶ 26 Furthermore, even if we were to entertain insurer's portability argument, in which it claims the second issue in *Colbert,* regarding other household vehicle exclusions, is controlling, we would find no merit. First and foremost, we observe a glaring distinction between insurer's policy in this case and the policies in the cases insurer claims are controlling: the insurer's policy does not contain a motorcycle exclusion or a large-truck exclusion; rather, a reader of the policy can only infer the exclusion from the definition of "Who Is Insured," which restricts coverage to "cars" and then defines cars in such a way

so as to severely limit coverage to exclude numerous classes of motor vehicles. *See* Prudential Car Policy, Parts 1, 2 & 3 at Definitions, p. 2, R. at 7 Exhibit A; *Id.* at p. 10, Who Is Insured (Part 2).

¶ 27 Even if there were an explicit motorcycle exclusion in the policy, however, we would find controlling our supreme court's decision in *Kmonk–Sullivan, supra.* The *Kmonk–Sullivan* court found that insurance policy definitions of an underinsured motor vehicle to exclude vehicles owned by government agencies were contrary to the express definition of an underinsured motor vehicle found at 75 Pa.C.S.A. § 1702 of the MVFRL. As our supreme court held, "the insurance policies, which purported to apply a more restrictive definition of underinsured motor vehicles [than the statute] are inconsistent with the statute. Consequently, the government vehicle exclusion cannot stand." *Kmonk–Sullivan v. State Farm Mut. Automobile Ins. Co.,* 567 Pa. 514, 526, 788 A.2d 955, 962 (2001).

¶ 28 In reaching its conclusion, our supreme court construed the provisions of the policies at issue when compared with the provisions of the MVFRL governing the policies. First, the court observed that § 1702 of the MVFRL defines an underinsured motor vehicle as " 'A motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages.' " *Kmonk–Sullivan, supra* at 522, 788 A.2d at 960, quoting 75 Pa.C.S.A. § 1702. The supreme court also recognized that the MVFRL requires insurers to offer UIM coverage. *Kmonk–Sullivan, supra* at 521–522, 788 A.2d at 960, quoting 75 Pa. C.S.A. § 7131(a). Furthermore, § 1731(c) of the MVFRL provides, "Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a ***motor vehicle*** and are legally entitled to recover dam-

ages therefor from owners or operators of underinsured *motor vehicles*." 75 Pa. C.S.A. § 1731(c) (emphasis added).

¶ 29 Next, the supreme court observed that § 1703 of the MVFRL exempts federally-owned vehicles from the MVFRL, but does not exempt all government-owned vehicles. *Kmonk–Sullivan, supra* at 524–525, 788 A.2d at 961–962. Relying on our Rules of Statutory Construction, the court noted, "An exception expressly provided in a statute is a strong indication that the legislature did not intend to exclude unexpressed items." *Id.,* citing 1 Pa.C.S.A. § 1924. Continuing, the court observed, "As a matter of statutory interpretation, although 'one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say.' " *Kmonk–Sullivan, supra* at 525, 788 A.2d at 962, quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L.Rev. 527, 536 (1947).

¶ 30 We will review the UIM policy provision at issue herein with the *Kmonk–Sullivan* court's analysis in mind. Part 5 of the Policy, found in Car Policy Parts 4, 5, 6, & 7, addresses UIM coverage. Under the title of this section, "**UNDERINSURED MOTORISTS PAC/5 PA (ED.7/90) IF YOU ARE HIT BY A MOTOR VEHICLE THAT IS UNDERINSURED[,]**" the relevant sections provide:

**OUR OBLIGATIONS TO YOU (PART 5)**

**UNDERINSURED MOTORISTS COVERAGE**

If **you** have this coverage (see the Declarations), **we** will pay up to **our** limit of liability for **bodily injury** that is covered under this part when an insured (whether or not occupying a **car**) is struck by an underinsured **motor vehicle**. **Our**

payment is based on the amount that an insured is legally entitled to recover for **bodily injury** but could not collect from the owner or driver of the underinsured **motor vehicle** because:

- **THE OWNER OR DRIVER IS UNDERINSURED**

   The owner or driver responsible for the accident has liability insurance or a liability bond with limits that are less than the full amount the insured is legally entitled to recover as damages.

Car Policy Parts 4, 5, 6, & 7 at p. 6, R. at 7 Exhibit A (emphasis in original).

¶ 31 In this case as in *Colbert, supra* and *Kmonk–Sullivan, supra,* we find that the legislature has clearly delineated those risks in its definitions of "insured" and "underinsured motor vehicle" in § 1702 of the MVFRL, set forth *supra,* in such a way as to include both claimant and the vehicle on which she was riding and Ziatyk in *Ziatyk, supra* and the vehicle in which she was riding. The legislature has also required that "[u]nderinsured motorist coverage *shall* provide protection for persons who suffer injury arising out of the maintenance or use of a *motor vehicle* and are legally entitled to recover damages therefor from owners or operators of underinsured *motor vehicles*." 75 Pa.C.S.A. § 1731(c) (emphasis added). Furthermore, the legislature has expressly made the MVFRL applicable to all motor vehicles required by state law to be registered, exempting only federally-owned vehicles from its purview. 75 Pa.C.S.A. § 1703.[6]

█ ¶ 32 Insurer must underwrite the risks the MVFRL requires it to underwrite. As claimant notes, the legislature was apparently aware of the risks associated with motorcycles when it enacted the MVFRL as it excluded motorcycles from

---

6. Section 1703 provides, "This chapter does not apply with respect to any motor vehicle owned by the United States." 75 Pa.C.S.A. § 1703. Application of this chapter.

the type of vehicles for which first party benefits are required. 75 Pa.C.S.A. § 1712. Based upon what the statute does not say, as well as what it does say, we therefore find invalid the limitation on coverage to "cars" in insurer's policy. As the *Hall* court implicitly admonished, we must not stray from the words of a legislative enactment in pursuit of its spirit. *Hall, supra* at 345, 648 A.2d at 759. All exclusions must first be tested against the plain language of the statute, using all of the tools of statutory construction, as the statute is always the clearest expression of public policy.

¶ 33 Additionally, we cannot agree with insurer that the exclusions our supreme court has upheld sweep so broadly as to allow an insurer to deny UIM coverage to its insureds any time they step into a motor vehicle that is not covered under their policy. A review of some of the cases upholding those exclusions illustrates the basis for our disagreement.[7]

¶ 34 In *Colbert, supra*, Adam Colbert, although living with his parents, was driving a vehicle he owned and insured under a separate automobile insurance policy. Our supreme court has upheld such "household vehicle" exclusions at least since it decided *Paylor v. The Hartford Ins. Co.*, 536 Pa. 583, 595–598 640 A.2d 1234, 1240–1241 (1994) (holding that, under the facts of that case, a family car exclusion, which excluded vehicles owned by or furnished or available for regular use of a named insured or any family member from the definition of an underinsured motor vehicle, did not violate public policy or the MVFRL where the insured is attempting to convert inexpensively purchased underinsured motorist coverage into liability coverage). In *Paylor*, the Paylors purchased automobile insurance on three of their vehicles from The Hartford. A separate policy of insurance, issued by a different insurer and providing substantially less coverage, insured the motor home in which they were riding at the time of the accident. As the *Paylor* court, citing Judge Kelly's dissent with approval, recognized:

> 'To permit [Paylor's] decedent's estate to recover the underinsured coverage [under The Hartford policy]... and void the family car exclusion ... is to allow the named insured's estate to convert inexpensively purchased underinsured motor coverage for the family cars into liability coverage on the motor home when [Paylor's] decedent and her late husband freely chose to insure the motor home for substantially less than the family's other vehicles.'

*Id.* at 597, 640 A.2d at 1241, quoting *Paylor v. The Hartford Ins. Co.*, No. 18 Philadelphia 1991, unpublished memorandum at 2–3, 1991 WL 349607 (Pa.Super. filed October 15, 1991) (Kelly, J., dissenting).[8] *See also Eichelman v. Nationwide Ins. Co.*,

---

7. Insurer cites to one federal district case we do not discuss, *TICO Ins. Co. v. Turpin*, 2002 WL 59346 (E.D.Pa. Jan.16, 2002), to support its argument; however, *TICO* is an unpublished memorandum.

Likewise, we do not discuss our supreme court's recent decision in *Progressive Northern Ins. Co. v. Schneck*, 572 Pa. 216, 813 A.2d 828 (2002), because we find it inapposite.

8. While our supreme court has frequently opined that cost containment is the only public policy behind the MVFRL, the *Paylor* court explained that concern in terms of the increasing number of uninsured motorists on Pennsylvania's highways. *Paylor, supra* at 587, 640 A.2d at 1235.

The policy of cost containment does not, therefore, give insurers carte blanche to exclude any and every form of coverage they choose or to rewrite the statute. *See Burstein, supra* at 185, 809 A.2d at 208 (stating that the policy of cost containment "will not validate any and every coverage exclusion ...."); *id.* at 219, 809 A.2d at 229 (Saylor, J., dissenting) (opining, "[I]t is important in my view to recognize that insurers do not possess unbri-

551 Pa. 558, 711 A.2d 1006 (1998) (finding valid a household exclusion clause in two policies Eichelman's parents purchased to cover their vehicles where the exclusion precluded a resident relative from recovering UIM benefits when the motorcycle he owned and was riding at the time of the accident was covered under a different company's policy, in which Eichelman had elected not to purchase UIM coverage).

¶ 35 Thus, the portability issue in *Paylor* as well as in *Colbert* and the other cases upon which insurer relies is clearly distinguishable from the issue in this case. In cases upholding a household vehicle exclusion, as in *Colbert*, the injured insured, whether a resident relative or a named insured, was the driver of a vehicle he or she owned, but which was not covered under the policy from which he or she sought to recover UIM benefits. Adam Colbert was driving his own vehicle, which he insured with State Farm, not Prudential, when he was injured. The Paylors were in the motor home they insured with

Foremost Insurance Company, not The Hartford, when they were injured or killed. *See also Burstein, supra* (holding that insureds could not recover UIM benefits under the insurance policy they purchased from Prudential when they were injured while driving a regularly-used, non-owned vehicle).

■■■■ ¶ 36 Tellingly, the *Burstein* court opined, "Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly ***drive*** an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle." *Id.* at 185, 809 A.2d at 208 (emphasis added). The supreme court's concern with insureds who regularly drive vehicles that are unknown to and uninsured by their insurers does not translate into a concern where those same insureds are passengers in vehicles they do not own and could not have insured with their insurers.[9]

---

dled authority to include any and all forms of ... exclusions in UM and UIM coverage according to their own individual notions of appropriate business purposes.").

9. Insurer also asks us to rely on the supreme court's *per curiam* order reversing this court in *Prudential Property & Cas. Ins. Co. v. McAninley*, 801 A.2d 1268, 1269 (Pa.Super.2002), *reversed*, 571 Pa. 490, 812 A.2d 1164 (2002) (*per curiam*). According to insurer, the supreme court's reversal of *McAninley* repudiates this court's decision in *Ziatyk, supra*, on which the *McAninley* court relied for part of its analysis. (Insurer's brief on remand at 32.)

In its *per curiam* order, the supreme court both granted Prudential's petition for allowance of appeal and reversed this court's order in *McAninley* on the basis of its decision in *Burstein, supra. Burstein* held that "the regularly used, non-owned car exclusion and its contractual restraint on UIM portability comported with the underlying policies of the MVFRL ...." *Burstein, supra* at 187, 809 A.2d at 210.

Thus, our supreme court's reversal of *McAninley, supra*, in a *per curiam* order based upon *Burstein, supra*, stands for nothing more than a repudiation of the *McAninley* court's reliance on our *en banc* decision in *Burstein, v. Prudential Prop. & Cas. Ins. Co.*, 742 A.2d 684 (Pa.Super.1999) (*en banc*), regarding the validity of a regularly used, non-owned car exclusion, an exclusion that is not at issue in either this case or *Ziatyk*. As our supreme court recently explained, "Where ... the supreme court affirms by *per curiam* order on the basis of the lower court's opinion, the supreme court signifies its agreement with the lower court's rationale ...." *Commonwealth v. Tilghman*, 543 Pa. 578, 589, 673 A.2d 898, 904 (1996). As the *Tilghman* court continued, "even where this Court should affirm on the opinion of the lower Court, the *per curiam* order is never to be interpreted as reflecting this Court's endorsement of the lower court's reasoning in discussing additional matters, in *dicta*, in reaching its final disposition." *Id.* at 589–590, 673 A.2d at 904. Thus, by extension, the supreme court's reversal of the lower court based upon the high court's analysis of an issue in one of its cases signifies the

¶ 37 Having determined the policy provisions at issue are invalid, we need not reach claimant's second issue, asking whether the policy is ambiguous. Furthermore, our analysis in this case supports the panel's analysis in *Ziatyk, supra;* therefore, we specifically approve that panel's decision.

¶ 38 This court's order entered in *Richmond v. Prudential Property & Cas. Ins. Co.,* 789 A.2d 271 (Pa.Super.2001), is vacated on *en banc* reargument; the trial court's denial of claimant's petition to vacate the arbitration award is reversed, and the case is remanded for entry of judgment in favor of claimant. Jurisdiction is relinquished.

¶ 39 LALLY–GREEN, J. files a Concurring Opinion.

¶ 40 DEL SOLE, P.J. files a Concurring Statement.

¶ 41 ORIE MELVIN, J. concurs in the result.

## CONCURRING OPINION BY LALLY–GREEN, J.:

¶ 1 I agree with the Majority that the definition of "insured" contained in the Prudential policy is impermissibly narrow, because it conflicts with the broad definition of "insured" in the MVFRL. *Prudential Prop. & Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747, 751 (2003). Moreover, I agree with the Majority that the policy does not contain any separate and explicit exclusion that would arguably operate to bar recovery under the facts of this case. *See,* Majority Opinion at 1268. In my view, this analysis is all that is necessary to support a conclusion that judgment should be entered in favor of

claimant Kristin Richmond. The remainder of the Majority's analysis, particularly the discussion of whether a separate "motorcycle exclusion" would violate public policy, is, in my opinion, not necessary to the holding of the case and, therefore, is dicta.

¶ 2 Bearing in mind that my own views on the subject are also necessarily dicta, I believe that a properly formulated exclusion may indeed pass muster under *Colbert.* In that case, our Supreme Court strongly suggested that UIM exclusions do not violate public policy so long as they "protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure." *Colbert,* 813 A.2d at 753, *quoting, Burstein v. Prudential Prop. & Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204, 208 (2002). Stated another way, the relevant question is whether the exclusion protects insurers from being forced to pay "gratis coverage on a vehicle that the insurer never knew existed." *Id.* at 754, 809 A.2d 204. Such exclusions are valid because they serve the public policy of keeping the cost of insurance low. *Id.* at 754–755, 809 A.2d 204.

¶ 3 The Majority expresses confidence that insurers may not write an exclusion which would "deny UIM coverage to its insureds any time they step into a motor vehicle that is not covered under their policy." Majority Opinion at 1270. After considering our Supreme Court's reasoning in *Colbert,* I do not share the Majority's confidence that this is true. To the contrary, such an exclusion may be valid because it "protect[s] insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure," and precludes "gratis coverage on a vehicle that the insurer never knew existed." *Colbert,* 813 A.2d at 753–754.[10] So

supreme court's disagreement with the lower court's rationale as to that issue alone.

**10.** The Majority argues that common exclusions such as the "regularly used, non-owned

car" exclusion and the "other household vehicle" exclusion are valid because there is a **high degree** of risk in regularly driving such vehicles, while there is a relatively **low** risk in merely being a passenger in a non-owned,

long as the insurer does not blatantly violate the MVFRL by defining terms such as "insured" and "underinsured motor vehicle" in ways that plainly conflict with that statute,[11] it would appear that insurers may bar recovery in a case such as this one with a carefully worded and explicit exclusion. Again, however, I agree with the Majority that no such exclusion exists in this case. Accordingly, I concur in part with the Majority's reasoning, and concur in the result.

## CONCURRING STATEMENT BY DEL SOLE, P.J.:

¶ 1 I join the Majority opinion but write separately to address the suggestion of my colleague Judge Lally–Green that the discussion of whether a separate "motorcycle exclusion" would violate public policy is not necessary to the decision in this case.

¶ 2 The thrust of Prudential's argument en banc involved the portability issue. Specifically, Prudential grounded its argument on that portion of *Prudential Prop. and Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002), which held that "household exclusions" are not void as violative of public policy since cost containment was one of the purposes of the MVFRL.

¶ 3 In requesting en banc certification, Prudential asked that we not only find in its favor but that we expressly disapprove of our holding in *Prudential Prop. and Cas. Ins. Co. v. Ziatyk*, 793 A.2d 965 (Pa.Super.2002) *appeal denied* 572 Pa. 708,

813 A.2d 843 (2002). To address this argument it is essential to distinguish the cases by focusing on the express language of § 1731(a) and (c) of the MVFRL and the holding in *Kmonk–Sullivan v. State Farm Mut. Automobile Ins. Co.*, 567 Pa. 514, 788 A.2d 955 (2001).

¶ 4 Also, it is appropriate to note that insureds who are passengers in or on vehicles they do not own are not able to purchase separate UM/UIM coverage to protect themselves while in or on these vehicles. Rather, they can only do so under their liability insurance policy. See 75 Pa.C.S.A. § 1736.

¶ 5 Therefore, I do not agree with the suggestion that the Majority Opinion needlessly opines on matters not necessary for a decision in this case.

underinsured vehicle. Majority Opinion at 1271. First, it is not clear that this analysis holds under the facts of this case. One could plausibly argue that because Richmond does not own her own vehicle, (1) she is **regularly** a passenger in various unknown vehicles and (2) as a result, this scenario poses a similarly high degree of risk. In any event, it would appear that the proper analysis turns not on the degree of risk, but rather on simply

whether the risk is unknown and uncompensated. *Colbert.*

11. See, *Colbert*, 813 A.2d at 751; *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Corp.*, 567 Pa. 514, 788 A.2d 955, 962–963 (2001) (insurer's definition of "underinsured motor vehicle" conflicted with the express terms of the MVFRL and was therefore invalid; as a result, the Court "declined to consider" public policy arguments).