NATIONWIDE ASSURANCE
COMPANY, Appellee

v.

Calvin EASLEY, Appellant.

Superior Court of Pennsylvania.

Argued May 20, 2008.

Filed Oct. 10, 2008.

Reargument Denied Dec. 15, 2008.

Harry H. Stump, III, Pittsburgh, for appellant.

James C. Haggerty, Pittsburgh, for appellee.

BEFORE: MUSMANNO, POPOVICH, and HUDOCK, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Calvin Easley appeals the grant of summary judgment to Appellee Nationwide Assurance Company on the basis that the trial court erred in construing exclusion clauses within an automobile insurance policy issued by Appellee to deny Appellant's claim for injuries sustained while operating a taxi. We affirm.

¶ 2 The pertinent facts are not in dispute. On the 19th day of August, 2001, Appellant sustained personal injuries in an automobile accident while operating a taxi owned by the Yellow Cab Company of Pittsburgh, Pennsylvania. Every day, Ap-

pellant paid a lease fee for the use of a taxi for a 24–hour period—Appellant had no choice over which taxi he received. While Appellant did not have a paying customer at the time of the accident, he was driving home after his shift and intended to return the taxi to the company the following day. Appellant made a claim against the negligent driver and received the policy limits of that operator's insurance, which sum Appellant claimed was insufficient to compensate him for his injuries. Appellant filed an underinsured motorist ("UIM") claim with his carrier/Appellee, but Appellee refused coverage contending that the "regularly used, nonowned vehicle" and "use for hire" exclusion clauses in Appellant's policy precluded payment because he operated a taxi during the accident. Appellee filed a declaratory judgment action seeking resolution of the coverage issue, and Appellant filed a cross-motion for the same relief. The trial court granted Appellee's motion but denied Appellant's cross-motion. Appellant then filed an appeal raising several issues, the first of which claims: "[Appellee's] exclusions are invalid because they provide a more restrictive definition of an underinsured motorist vehicle than the broad coverage required by the Motor Vehicle Financial Responsibility Law [ (MVFRL) ]."[1] Appellant's brief, at 7.

■ ¶ 3 In the present case, Appellant purchased an automobile insurance policy from Appellee which provided coverage for bodily injury sustained at the hands of an "underinsured motor vehicle,"[2] but excluded coverage for bodily injury suffered under the following circumstances; to-wit:

## EXCLUSIONS

This coverage does not apply to **bodily injury** suffered by a person:

(1) While **occupying a motor vehicle** owned by or furnished or available for the regular use of **you** or a **relative** for which insurance is not afforded under this Part, or through being struck by that **motor vehicle.**

(2) While **occupying your insured car** when used to carry persons or property for a charge. Coverage does apply to shared expense car pools.

Appellee's "**PENNSYLVANIA AUTOMOBILE POLICY,**" at 13 (emphasis in original). It is Appellant's position that Appellee's two exclusions (a motor vehicle "furnished or available" for Appellant's regular use or occupied by Appellant "when used to carry persons or property for a charge") are invalid as repugnant to Pennsylvania's MVFRL, which mandates UIM benefits to "a person who suffered injury arising out of the maintenance or use of a motor vehicle and was legally entitled to recover damages therefore from owners or operators of [UIM] vehicles. Any additional exclusion or limitation by definition of the mandatory coverage is void." Appellant's brief, at 10. We agree with Appellant's contention that UIM benefits must be offered to an in-

---

1. 75 Pa.C.S.A. § 1701 *et seq.*

2. Appellant's policy of insurance with Appellee also provides, as herein relevant, that:

    (2) **Motor vehicle** means a land **motor vehicle** [ . . .] designed primarily to transport persons or property upon the highway [ . . .].

    (3) An **Underinsured motor vehicle** is a **motor vehicle** for which bodily injury liability coverage, bonds or self-insurance are in

effect. However, their total amount is insufficient to pay the damages an **insured person** is entitled to recover. **We** will pay damages that exceed such total amount.

    **Underinsured motor vehicle**, however, does not mean a vehicle:

    (a) owned by or furnished or available for the regular use of **you** [ . . .].

Appellee's "**PENNSYLVANIA AUTOMOBILE POLICY,**" at 13 (emphasis in original).

sured in this Commonwealth, but UIM benefits need not be paid under exclusions that do not violate public policy.

¶4 In *Ratush v. Nationwide Mutual Insurance Company,* 422 Pa.Super. 389, 619 A.2d 733 (1992), *appeal denied,* 535 Pa. 637, 631 A.2d 1009 (1993), Appellant operated a cab owned by Alexandria Cab Company, which was involved in a motor vehicle accident in Philadelphia. Appellant did not seek first party benefits under a self-insurance plan issued by I.F.T., Inc., to insure the cabs. Rather, Appellant filed a claim to recover benefits from Nationwide, which had issued a policy of insurance providing coverage for a vehicle owned by Appellant's wife. When Nationwide denied coverage, Appellant filed an action to recover first party benefits. The trial court, on petition by Nationwide, entered summary judgment holding that there was no coverage by virtue of a policy provision excluding coverage for a vehicle "used to carry persons or property for a fee." [3] Appellant filed an appeal from the judgment arguing that the policy exclusion was inapplicable to his accident because the taxi he had been operating was not then carrying a passenger. When the accident occurred, Appellant was driving home and had no intention of carrying persons for a fee. The trial court rejected this argument, which position was affirmed by this Court on appeal on the following grounds; to-wit:

It is a matter of common knowledge that the premium rate of insurance upon automobiles used for commercial purposes is higher than on cars used for pleasure. The obvious reason for this is the increased hazard. The rate charged is based upon the terms of the contract. No reason is advanced for disregarding the contract.

* * *

Thus, in the instant case, the language of the policy was clear. A distinction was created between vehicles owned and operated privately, including vehicles used for car pooling purposes, and vehicles being used to carry passengers for hire. The vehicle being operated by [A]ppellant at the time of his accident was a taxicab whose purpose was to carry passengers for compensation. Applicability of the policy's exclusion did not vary according to whether the taxi was occupied or unoccupied at any given moment or according to whether its driver, at that time, did or did not intend to pick up passengers. [ . . . ].

Because the summary judgment entered by the trial court was in accord with precedential authority, its action must be, as it is,

Affirmed.

*Ratush,* 619 A.2d at 734 (citations omitted). On the strength of established case law,

---

3. The policy relied upon by the trial court to deny Appellant coverage provided as follows:
    6. There is no coverage for use by **any insured** of any vehicle to carry persons or property for a fee. However, shared-expense car pools will not be considered carrying persons for a fee.
*Ratush,* 619 A.2d at 733 n. 1. Appellant in *Ratush* argued that the trial court relied upon a policy different than that which had been issued to his wife. This policy, he contended, established an exclusion by the following language:

We do not provide Medical Payments Coverage for any person for bodily injury:

* * * *

2. sustained while **occupying your covered auto** when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
The *Ratush* Court held that the slight variance in the language did not alter its analysis of the coverage issue raised by Appellant.

we hold that the exclusion clause precluding coverage for injuries sustained in accidents occurring when using a vehicle for hire is valid. Such preclusion is applicable regardless of whether the vehicle was carrying a passenger for a charge[4] at the moment of the accident. *Ratush*, 619 A.2d at 734 (*quoting Rykill v. Franklin Fire Ins. Co.*, 80 Pa.Super. 492 (1923)); *compare Brink v. Erie Insurance Group*, 940 A.2d 528 (Pa.Super.2008) (police officer injured while operating police cruiser; "regular use" exclusion prevented coverage for UIM through police's own private automobile insurance policy; exclusion clause not against public policy); *Estate of Demutis v. Erie Insurance Exchange*, 851 A.2d 172 (Pa.Super.2004) (household exclusion clause upheld to deny insured benefits under his own policy of insurance where he already received UIM benefits under his parents' insurance); *contrast Prudential Property & Casualty Insurance Co. v. Sartno*, 588 Pa. 205, 903 A.2d 1170 (2006) (use of the insured's private vehicle to deliver pizza did not render his automobile a "car for hire" and did not trigger the exclusionary clause of his policy; exclusionary clause was ambiguous and capable of at least two equally reasonable interpre-

tations, which the Court construed in favor of insured to permit coverage); *Erie Insurance Exchange v. E.L.*, 941 A.2d 1270 (Pa.Super.2008) (backseat passenger allowed to recover under father's UM/UIM policy because passenger was not "using" a motor vehicle when she sustained bodily injury; therefore, she did not come within "regularly used non-owned vehicle exclusion;" vehicle in which passenger injured was owned by mother and driven by brother, and she used the entire amount of coverage available from her mother's insurance policy before resorting to father's insurance).

■ ¶ 5 Appellant cites *Prudential Property & Casualty Insurance v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002); *Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Co.*, 567 Pa. 514, 788 A.2d 955 (2001); and *Richmond v. Prudential Property & Casualty Insurance*, 856 A.2d 1260 (Pa.Super.2004), for the proposition that UIM coverage is a mandatory offering in Pennsylvania, and the effect of Appellee's denial of coverage is the equivalent of rewriting the UIM statute and making an unwarranted reduction of the broad coverage mandated by MVFRL.[5] We disagree.

---

4. Appellee's policy of insurance excluding coverage when the vehicle is used to carry a person or property for a "charge" is not ambiguous. *Contrast Prudential Property & Casualty Insurance Co. v. Sartno*, 588 Pa. 205, 903 A.2d 1170 (2006), wherein the Court held that use of insured's private vehicle to deliver pizza did not render his automobile a "car for hire" and did not trigger exclusionary clause of his policy because it was ambiguous, which the Court interpreted in favor of insured to allow coverage. Thus, *Sartno* is not relevant to the disposition of the present case, which deals with Appellant's operation of a taxi leased for a fee to transport passengers for a charge, which exclusionary clause is not ambiguous.

5. Appellant's citation to *Kmonk–Sullivan* and *Richmond, supra*, does not give us cause to

find that Appellee's policy exclusions violate the MVFRL.

*Kmonk–Sullivan* involved insurance carriers that refused to pay UIM benefits to policyholders injured by Allegheny County government vehicles because the policies explicitly excluded governmental vehicles from the definition of an underinsured vehicle. Our Supreme Court held in *Kmonk–Sullivan* that the insurers' government vehicle exclusions were in conflict with the provisions of the MVFRL, and coverage was permitted. The government vehicle exception is distinguishable from the "regularly used, not owned" and "use for hire" exclusions at issue here, since the former concerned the identity of the underinsured motorist as opposed to a limitation on portability.

In *Richmond*, the Court held that the definition of "insured" contained in Prudential's

¶ 6 In *Burstein v. Prudential Prop. & Cas. Ins. Co.,* 570 Pa. 177, 809 A.2d 204 (2002) (plurality opinion), the Pennsylvania Supreme Court held that the regularly used, non-owned car exclusion and its contractual restraint on UIM portability comport with the underlying policies of the MVFRL, which is the legislature's concern for the increasing cost of insurance and not the principle of "maximum feasible restoration" embodied in the now defunct No–Fault Act. *Burstein,* 809 A.2d at 207 n. 2, 209. Albeit the policy definition of "insured" was in conflict with the definition of "insured" contained in the MVFRL, Appellant in *Colbert* was not able to demonstrate that the "other household vehicle" exclusion was unenforceable as violative of clearly-expressed public policy. The legislative concern for the spiraling cost of insurance was the public policy advanced by the statutory interpretation of the MVFRL in *Colbert, supra,* which proscribed (as did *Burstein, supra* ) "gratis coverage on a vehicle that the insurer never knew existed." *Colbert,* at 94, 813 A.2d at 754. The Court in *Colbert* found the "other household vehicle exclusion" in the insurer's policy valid to prohibit the insureds' son (Adam Colbert resided with his parents/insureds) from collecting UIM coverage under their policy of insurance. In the course of doing so, the high Court wrote:

It is undisputed that Adam Colbert purchased UIM coverage on his vehicle from State Farm and actually received the maximum amount payable under that coverage. Thus, *Adam received the UIM coverage for which he paid.* Nonetheless, Adam also attempted to recover UIM benefits from his parents'

insurance policy with Prudential. Neither Adam nor his parents paid Prudential to insure his car; indeed, the "other household vehicle exclusion" in Prudential's policy expressly excluded such vehicles from coverage. Likewise, there is nothing to suggest that Adam or his parents ever disclosed Adam's vehicle to Prudential. Under these facts, voiding the "other household vehicle exclusion" would force Prudential into the same predicament as was the insurer in *Burstein:* it would be compelled to underwrite unknown risks that the insureds neither disclosed nor paid to insure. In addition, Adam would stand to receive gratis coverage or, more accurately, *double coverage.*

Moreover, voiding the "other household vehicle" exclusion would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured,* even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion. The same would be true even if the insureds never disclose any of the other household vehicles to the insurers. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. As we rejected this result in *Burstein,* we must reject it here.

*Colbert,* at 94, 813 A.2d at 754 (emphasis in original). In essence, we read *Colbert* and *Burstein* to endorse exclusion clauses pro-

policy was impermissibly narrow, and it conflicted with the broad definition of "insured" in the MVFRL. Such is not the case here, which is restricted to the portability of Appellant's personal automobile insurance policy

regarding injuries he sustained while operating a taxi for a fee, which we hold is not in conflict with the MVFRL. *See* discussion *infra.*

vided they advance MVFRL's objective of containing insurance costs, which is being achieved here with the denial of Appellant's UIM claim filed under his automobile insurance policy containing "regularly used, non-owned vehicle" and "use for hire" exclusions. To require payment would permit Appellant to receive a windfall for coverage not paid for in the form of increased premiums due on vehicles for hire. *See Ratush, supra.*

■ ¶ 7 The fact that Appellant did not have a passenger when the accident occurred does not render the "use for hire" exclusion invalid. *See Ratush, supra.* Nor does the fact that Appellant did not operate the same taxi each day he paid a lease fee invalidate the *"regularly* used, non-owned vehicle" exclusion.[6] *See Prudential v. Peppelman,* 2003 U.S. Dist. LEXIS 7650, *6–8 (E.D.Pa.2003) (regularity with which one operates a vehicle is of no consequence to enforcement of "regular use" exclusion; rather, availability of a vehicle from fleet controls); *Prudential Property & Casualty Insurance Co. v. Armstrong,* 2004 U.S. Dist. LEXIS 4918, *6–7 (E.D.Pa.2004) (semble).

¶ 8 To summarize, we hold meritless Appellant's arguments that: 1) the insurer's exclusions are at odds with the broad coverage required by the MVFRL, *see Colbert; Burstein, supra;* 2) the insurer's exclusions apply only "when" the taxi had a passenger for hire, *see Ratush, supra;* and 3) the insurer's exclusions are inapplicable because his possession of the taxi was for a period of less than 24 hours, which created an ambiguity to be construed in favor of the insured rendering the taxi for "temporary or occasional use"

instead of "regular use," *see Armstrong; Peppelman;* footnote 6, *supra.*

¶ 9 Judgment affirmed.

---

**6.** During Appellant's deposition, he testified that he paid Yellow Cab Company a lease fee for the use of a taxi, which cost started at $70 a day, but it escalated to $77 per day as time went on. Reproduced Record at 17a. Appellant also recalled that "every day" he went to Yellow Cab Company, but he did not drive the same taxi: "[I]t was a situation where [he] would go into a garage and there would be 15 Yellow Cabs sitting there, and [Appellant] would just go pick the one [he] wanted[.]" *Id.* at 18a.